## W. W. OXSHEER v. ABRAM NAVE ET AL.

### Decided April 8, 1897.

**1. Descent and Distribution—Heir Indebted to Estate.**

The debt of one of the heirs to the estate is a part of the property subject to distribution, and should be taken by him in satisfaction of his share pro tanto; or, if more than his share, so much of it as amounts to his share should be set aside to him. (P. 573.)

**2. Same—Judgment Creditor of Heir.**

The wife of O. died leaving community estate, real and personal, to heirs, one of whom was insolvent and indebted to the community in notes given to O., not for advancements, in excess of the value of his distributive share of the estate. The holder of a judgment against such heir, duly recorded and indexed before the death of the mother, levied on and sold the heir's interest in lands of the estate. In a suit brought by O. against the heirs and such judgment creditor to partition the community estate and offset such heir's indebtedness against his share thereof: Held, that on failure of the indebted heir to pay the debt, so much of it as amounted to his share should be set apart to him; and that the creditor, by his judgment, lien and sale, took no greater rights than the heir and acquired no rights in the land as against the other heirs. (Pp. 570 to 576.)

**3. Same.**

The fact that the indebtedness of the insolvent distributee is partially secured by a lien on other property will not affect the rights of the parties in such a case. (P. 576.)

QUESTIONS CERTIFIED from the Court of Civil Appeals, Third District, in an appeal from Bell County.

*Harris & Saunders,* for appellant, W. W. Oxsheer.—In partition of an estate the heirs or distributees must account for their indebtedness to the estate; and a creditor of an heir takes subject to the right of the administrator to offset the heir's interest as a distributor with his indebtedness to the estate, and especially so if said heir is insolvent. Rev. Stats., art. 645; Adair v. Hair, 73 Texas, 273; Ruiz v. Campbell, 26 S. W. Rep., 295; Powers v. Morrison, 30 S. W. Rep., 851; Am. & Eng. Encycl. Law, vol. 22, title, set-off, pp. 312, 313 and 315, note 7; Proctor v. Newhall, 17 Mass., 81; Cox v. Cox, 44 Ind., 368; Fiscus v. Moore, 121 Ind., 549; Batton v. Allen, 1 Halst. (N. J. Ch.), 99, 43 Am. Dec., 630; Sedgwick v. Minot, 6 Allen, 171; 100 Mass., 273; Earnest v. Earnest, 5 Rawle, (Pa.) 213; Hughes Appeal, 57 Pa., 179; Persons Appeal, 74 Pa., 123; Smith v. Kearney, 2 Barb., Ch. (N. Y.), 534; Levering v. Rittenhouse, 4 Whart., (Pa.) 137; 63 N. H., 65; 7 Am. & Eng. Encycl. Law, 259 and 316, note; U. S. Digest, 1892, p. 1514, secs. 98, 99, 102, 103; U. S. Digest, 1890, p. 1523, secs. 420 to 422; 2 Jones Equity, 43; 2 Kent's Com., 531; Schuler's Executors and Administrators, (2nd ed.), sec. 498; 9 Watts, 353; Waterman on Set-off, sec. 210.

The marital relation in this State is similar to an ordinary partnership, and upon the death of the wife the surviving husband has the same control over community property that the surviving partner has over partnership property in case of the death of a partner, and all the property being in possession of the surviving husband, and the strict legal title of said property being in him, no lien can be acquired by a third party against any interest of one distributee of such estate, either in the lands or personal property, that will or ought to prejudice the rights and interests of

the other distributees, and prevent them receiving their full shares of the estate.   Carter v. Conner, 60 Texas, 52; Jones v. Jones, 15 Texas, 143; Woolley v. Adams, 55 Texas, 533; Walker v. Abercrombie, 61 Texas, 69; Leatherwood v. Arnold, 66 Texas, 414; Aiken v. Jefferson, 65 Texas, 137; Traders' National Bank v. Cressom, 75 Texas, 298; McCutchen v. Davis, 8 S. W. Rep., 123; McKay v. Overton, 65 Texas, 85; Moore v. Steele, 67 Texas, 435; Carhart v. Brown, 86 Texas, 425.

Resulting trusts and equitable claims are not subject to or affected by registration laws.   Parker v. Coop, 60 Texas, 111; Blankenship v. Douglass, 26 Texas, 227; Grace v. Wade, 45 Texas, 532; Michael v. Knapp, 4 Texas Civ. App., 461; McKamey v. Tharp, 61 Texas, 645; Allday v. Whittaker, 66 Texas, 669.

Judgment creditors of heirs are chargeable with notice of whatever advancements may have been made to such heirs, and with whatever debts such heirs may owe the estate in which they are entitled to shares by inheritance, and such creditors are not bona fide purchasers or bona fide lien holders.   McKamey v. Tharp, 61 Texas, 545; Allday v. Whitaker, 66 Texas, 669.

*Saunders & Durrett,* for appellants, Smith and Letcher.—A distributee of an estate, indebted to the estate in a sum exceeding the value of his interest in the estate, and insolvent, is not entitled to any portion of the estate on partition; and a judgment creditor of such insolvent distributee who has purchased the interest of such distributee at his own execution sale and paid for the same by credit on his indebtedness against said distributee can take nothing in partition without paying to the estate the debts so owing to it by such insolvent distributee.   Ruiz v. Campbell, 26 S. W. Rep., 295; Powers v. Morrison, 30 S. W. Rep., 851; Adair v. Hair, 73 Texas, 273; Koons v. Mellett (Ind.), 23 N. E. Rep., 95.

A judgment lien on the interest of a distributee in the lands of the ancestor is subject to every equity against such interest in favor of the administrator, survivor, or other distributees, at the time such lien was fixed, and courts will protect such equitable liens or rights against the legal lien and will limit the legal lien to the actual interest which such distributee has in the land.   Blankenship v. Douglass, 26 Texas, 225; Koons v. Mellett (Ind.), 23 N. E. Rep., 95.

The survivor of the community, the executor or administrator or the other distributees, have the right to offset the indebtedness of an insolvent distributee to the estate against his interest in the estate.   Masterson v. Goodlett, 46 Texas, 407; Smith v. Kearney, 2 Barb. Ch., 534.

*R. H. Looney,* for appellee.—Where the real estate of an intestate, by statute descends to and vests in the heir upon the death of the intestate, or when an indefeasible title to real estate is transferred in a will to a devisee, upon the death of the testator or intestate, the title to the land at once passes to the heir or devisee, and is subject to seizure and sale under execution or to alienation; and the right of the purchaser or lien holder

to the land is not affected in any way by reason of the fact that the heir or devisee owed the intestate or testator any sum of money when the same is a debt as distinguished from an advancement. Rev. Stats., art. 1653; Mann v. Mann, 12 Heisk., 246; Scobee v. Bridges, 87 Ky., 427; Towles v. Towles, 1 Head, 601; Procter v. Newhall, 17 Mass., 92; Thompson v. Myers, 26 S. W. Rep., 1015; Steele v. Frairson, 3 S. W. Rep., 650; Powers v. Morrison, 50 S. W. Rep., 851.

GAINES, CHIEF JUSTICE.—In this case the following questions have been certified for our decision:

"This is a suit brought by W. W. Oxsheer against his children—Viola M. Smith and her husband, Medora M. Letcher and her husband, and F. G. Oxsheer—for partition of the community property owned by plaintiff and his deceased wife, Martha E. Oxsheer, who died December 14, 1893, and to offset the indebtedness of F. G. Oxsheer to said community estate against his interest therein; and against Abram Nave to restrain him from selling a portion of the land belonging to said community estate, situated in Milam County, Texas, levied on as the interest of F. G. Oxsheer therein under an execution issued out of the District Court of Mitchell County, Texas, on a judgment in favor of said Nave and against said F. G. Oxsheer, on the ground that F. G. Oxsheer was indebted to said community estate in an amount exceeding the value of his share of said estate, and was insolvent.

"The defendants, Mrs. Smith and Mrs. Letcher, filed answers adopting the petition and prayer of plaintiff. F. G. Oxsheer waived service, but filed no answer.

"Abram Nave answered by general demurrer, general denial, and further alleged that at the date of the death of said Mrs. Martha Oxsheer he held a valid unsatisfied judgment for $8881.10 against F. G. Oxsheer and John T. Beal, and that a properly certified abstract of the same was filed and recorded and properly indexed in the proper judgment records of Milam County, Texas, where the lands owned by plaintiff and his deceased wife were situated, on the 7th day of May, 1892; that he held a lien on the one-sixth interest inherited by F. G. Oxsheer from his mother in said community lands by virtue of the record of said judgment; that the one-sixth of all of said lands had been sold under execution issued upon said judgment, except one tract of five hundred acres, and that said Nave became the purchaser and is now the owner of the same by fee simple title, and holds a lien on one-sixth interest in the remaining tract not sold, praying for judgment for same, for partition, etc.

"The case was tried by the court without a jury, and judgment rendered in favor of plaintiff for five hundred acres of the land described in his petition as his separate property and for one-half the other lands and for partition of the same; and in favor of defendant Nave and said Mrs. Smith and Mrs. Letcher each for one-sixth of three of the tracts described in plaintiff's petition as community property, and in favor of said Mrs. Smith, Mrs. Letcher and plaintiff each one-sixth of the other tract of

community land not sold by Nave; adjudging the personal property on hand to plaintiff, charged with the community debts, amounting to $4800. The plaintiff appeals to this court, assigning errors for reversal of the case.

"The evidence discloses the following facts bearing upon the questions hereafter certified:

"Mrs. Martha E. Oxsheer died December 14, 1893, and left surviving her W. W. Oxsheer, her husband, and F. G. Oxsheer, Viola M. Smith and Medora M. Letcher, children of the said W. W. and Martha E. Oxsheer.

"Said Martha E. Oxsheer died intestate, and said three children are her only heirs.

"At the time of the death of Mrs. Oxsheer she and her husband owned community property of the value of about $50,000.00, and owed community debts amounting to about $6600.00. And at said time F. G. Oxsheer was indebted to said community estate, principal and accrued interest, about $17,000, which was partially secured by mortgage lien on 160 acres of land—no part of the property involved in this suit—worth about $800.

"It was also shown that F. G. Oxsheer was insolvent.

"F. G. Oxsheer's indebtedness to said estate was evidenced by promissory notes payable to W. W. Oxsheer, and the testimony does not show that the consideration for which said notes were given was intended as an advancement, and we find that his liability to the estate was that of a debtor.

"It was further proved that on the 23rd day of April, 1892, the defendant, Abram Nave, recovered judgment against F. G. Oxsheer and John T. Beal in the District Court of Mitchell County, Texas, for the sum of $8881.10; that on the 7th day of May, 1892, a duly certified abstract of said judgment was properly recorded and indexed in the judgment records of Milam County, Texas, in which the land in controversy is situated; that executions were duly and regularly issued upon said judgment so as to keep the same alive, until February 8, 1895, when an alias execution was issued on said judgment to Milam County, and by virtue thereof the sheriff of said county, on the 16th day of May, 1895, levied on the one-sixth undivided interest owned by F. G. Oxsheer in all the real estate involved in this suit, except the five hundred acres shown to be the separate property of W. W. Oxsheer and adjudged to him by the judgment in this case; that said lands were duly advertised and sold in the manner prescribed by statute for sheriffs' sales, and the defendant, Abram Nave, became the purchaser thereof at said sale for the sum of $500, which sum, less the costs and expenses of said sale, was credited on said execution.

"Among others the following material questions are presented for decision—and which questions the Court of Civil Appeals for the Third Supreme Judicial District of Texas desires to and hereby does certify to the Supreme Court of the State for decision:

"Whether or not, under the circumstances disclosed by the facts above stated, as against the defendant, Abram Nave, the indebtedness of F. G. Oxsheer to the community estate of W. W. and Martha E. Oxsheer should be off-set against the claim of said defendant to the land in controversy through his judgment lien and purchase thereunder, so as to defeat or diminish his claim to said land. Or, stating the question in general terms, in the partition of an estate, when a creditor of one of the heirs shown to be insolvent has obtained a judgment lien on said heir's interest in the real property belonging to said estate, and said insolvent heir is indebted to the estate—not for property received as an advancement, but in like manner as other debtors—will the right of the other distributees, as between them and said insolvent distributee, to off-set said indebtedness against his interest in the community, be extended to and apply as against the judgment lien creditor, who has bought the interest of said insolvent distributee under a sale made by virtue of an execution issued on his judgment?

"And, second, will the fact that the indebtedness of such insolvent distributee is partially secured by a lien on other property in any wise affect the rights of the parties?"

Upon the questions growing out of the claim of the distributees of an estate of a deceased person to have one of them who is indebted to the estate to account for his debt in the distribution, the decisions are various and conflicting. At an early day it was held in England that a legatee who was indebted to the estate of the testator could only demand the balance of the legacy remaining after the subtraction of his debt. (Jeffs v. Wood, 2 P. Wms., 128.) The rule appears to have been uniformly followed in the English courts, but with the exception of Re Cordwell's Estate (L. R., 20 Eq. Cas., 644) we have found no case in those courts in which it has been applied to a distributee. But that it does so apply is the doctrine generally recognized in this country. In some of our States, however, it is held, that the right to set off the debt against the distributive share continues only so long as the share remains the property of the distributee and that if it be aliened by voluntary or involuntary conveyance, the right is lost. The administrator in those States is deemed merely the creditor of the distributee, as to the real estate at least, standing upon the same plane as other creditors, and in such jurisdictions it comes to a race of diligence between them. (Thompson v. Myers, 26 S. W. Rep., (Ky.) 1014; Scobee v. Bridges, 87 Ky., 427; Towles v. Towles, 1 Head, (Tenn.) 601; Mann v. Mann, 12 Heisk., (Tenn.) 245; Steele v. Frierson, 85 Tenn., 430; In re Coven's Estate, 20 S. C., 471; Smith v. Kearney, 2 Barb. Ch., 533. On the other hand it has been held in other courts in this country, that the rule applies in the distribution of real estate as well as of personal assets. (In re Dickinson's Estate, 148 Pa. St., 142; Fiscus v. Fiscus, 127 Ind., 283; Fiscus v. Moore, 121 Ind., 547; Nelson v. Murfee, 69 Ala., 598.) But in the case last cited the court say: "We need not and do not decide in this case what would be the rights and remedies of the administrator if the descended lands remained un-

sold. Whether, when the heir is insolvent and owes the estate of the ancestor, as in this case, the administrator has any prior right to demand payment out of lands descended, or whether it becomes a mere race of diligence between him and other creditors of the heir, is a question not raised by this record."

The right to have the debt of the legatee or distributee charged to him in the adjustment of the legacy or the distributive share is called a right of "set-off" or of "retainer." But the inaccuracy of the former expression is pointed out in Cherry v. Boultbee, 4 Mylne & Craig, 442, and has frequently been recognized in other cases. So the improper use of the word "retainer" in the same connection has been commented upon. In re Akerman, 3 L. R. (1891), Ch. Div., 212. The right, in our opinion, rests, not so much upon any rule of set-off or of retainer as upon the broad principles of equity. In Powers v. Morrison, 88 Texas, 133, the attempt was to charge the grandson of the intestate, his father having died before the grandfather, with the debt owed by his father in his lifetime to the intestate. It was claimed that the grandson took through his father and not directly from the grandfather. The argument upon both sides proceeded upon the theory that if the son had been alive at the death of his father he would have been compelled to pay his debt to the estate or to account for it in the distribution. We held the grandson took in his own right and not merely as the representative of his father, and therefore the question here presented was not in the case. But in the opinion we accepted the theory, acted upon by counsel and used the following language: "It does not follow, that because the father of plaintiff in error, if he had been alive at the death of the intestate, would have had to account in settlement for his debt, that he would not have recovered his due share of the estate. He would not have been permitted to assert that his debt to the estate was of no value, though under other circumstances it may have been worthless. If alive, he would have received his full share in his debt." These expressions in some degree foreshadow the just principle upon which the question should be determined. Under our statutes the real and personal estate of an intestate descend alike to the heirs, charged with the payment of debts and subject to administration for that purpose. Both the real and personal property, when administered, are subject to distribution among the heirs in one proceeding. The debt of one of the heirs to the estate is a part of the general mass of property subject to distribution, and if such heir fail to pay it, if more than his share, so much of it as amounts to the value of his share should be set apart to him;—if less than his share, it should be taken by him in satisfaction of that share so far as it will go. The principle was applied in re Ackerman, above cited. In deciding that case the court say: "The argument is, that though as regards the executors and as regards the personal estate what is due from the sons must be brought into account so as to constitute a complete residue, yet as regards the proceeds of sale of the real estate that principle does not apply, and there is this foundation at

least for the argument, that no case has been produced in which the general rule has been held applicable to such a state of things. The reason why that is so may perhaps be that which is hinted at rather than mentioned by Vice-Chancellor Bacon in the case of In re Cordwell's Estate, in which he said that he was not surprised at there being no case cited on the point. There an attempt was made to distinguish between the right of an administrator and that of an executor, and the Vice-Chancellor decided the case on the general principle. I think I must decide this case on the general principle. The Lord Chancellor, Lord Cottenham, in the case of Cherry v. Boultbee, took occasion to remark that the expression "set-off" is very inaccurately used in cases of this kind, and he might have added, no doubt, that inaccuracy implies confusion. I will venture to add to that remark that the term "retainer" also is inaccurately used in cases of this kind. I have heard more of "retainer" in this case than I have heard of "set-off," but neither the one term nor the other can really be used with propriety, and either, I think, equally introduces confusion.

"The principle is to be found laid down in Cherry v. Boultbee in the passage to which I have just referred, and also in Courtenay v. Williams, and no doubt, if search were made, it would be found to have been laid down in many other cases. It is this. A person who owes an estate money, that is to say, who is bound to increase the general mass of the estate by a contribution of his own, cannot claim an aliquot share given to him out of that mass without first making the contribution which completes it. Nothing is, in truth, retained by the representative of the estate; nothing is, in strict language, set off; but the contributor is paid by holding in his own hand a part of the mass, which, if the mass were completed, he would receive back. That is expanding what the Lord Chancellor calls in Cherry v. Boultbee "a right to pay out of the fund in hand," rather than a set-off, and is in conformity with what the Lord Chancellor, Lord Lyndhurst, in Courtney v. Williams, says: 'The defendant's, the legatee's, demand (the court says) is in respect of the testator's assets, without which the executor is not liable; and it is very just and equitable for the executor to say that the defendant, the legatee, has so much of the assets already in his own hands, and consequently is satisfied pro tanto.' Why should not that be applied to a case like this, where the property is put together, and the whole is given to the same persons upon the same trusts, both for payment of debts and other deductions and for division among the same persons? The principle is the same. The contributor to the mass is in precisely the same position whether the mass is held by trustees or by an executor, and it would, to my mind, be introducing mere technicality into the principle, and preventing its proper and reasonable application to say that because there is no legal personal representative of the testator,—because the representative is a trustee and not an executor,—therefore the contributor is to get off, and have his aliquot share of the mass minus his contribution to it, instead of having his aliquot share of the mass, including his contribution.

"Mr. Warmington says that he takes only real estate, and that he does

not claim any personal estate, and therefore the rule in Courtney v. Williams does not apply. I am not deciding a case where there is a mere gift of real estate, whether it be a gift directly to the legatee or devisee, or through the intervention of a trustee, or by way of trust for sale. But here I am dealing with a case such as I have mentioned—with a general fund made up of proceeds of sale of real estate, and proceeds of conversion of personal estate,—and there seems to me to be a principle of general application, and no reason occurs to me,—none has been suggested,— why I should not apply that principle. Therefore, I think that if there is a debt payable by a residuary legatee under such circumstances as exist here, that debt must, for the purposes of computation, be included in the residue, and—again for the purposes of computation—treated as part of the share going to the legatee debtor."

This clear and able exposition, in our opinion, announces the true doctrine and leaves little to be said. We think it decisive of the question certified.

In that case the will of the testator, after providing certain specific devises and legacies, directed that his executors should sell all his real and personal estate, and after paying his debts and primary legacies, "to hold the net residue thereof in trust as to three seventh parts thereof, to invest the same for the benefit of his son, Edward, and his (the testator's) two daughters upon certain specified trusts, and to pay the remaining four seventh parts thereof to his sons Henry, William, James, and George, in equal shares, as tenants in common." Here the will of the testator as to the four-sevenths of the net residue makes substantially a similar provision as is made by our statute in cases of intestacy, except that it provided for the conversion of the estate into money. We apprehend that this makes no difference in principle, for the reason that the equity of requiring the debtor distributee is the same whether the mass to be distributed consists of property or money; and it is within the power of courts of equity to enforce the equity as well in the one case as in the other. Under our statutes in relation to the estates of deceased persons, a conversion of the property, both real and personal, may become necessary upon either of two contingencies: 1. For the payment of debts; and 2, in order to bring about equality in the final distribution. In principle we perceive no sound distinction between the two cases, unless the right to have the debtor distributee to account is placed upon the ground of retainer or of set-off—a doctrine distinctly repudiated in the case under review.

In the able argument of counsel for the appellee, it is ingeniously insisted that according to the weight of authority in this country the rule which requires the debtor distributee to account for his debt does not apply to real estate, because that descends directly to the heirs; and that since our statute devolves the title both of real and personal property directly upon the heirs, in this State, it does not apply at all. But we apprehend the declaration of our statute as to the descent of property makes no difference, since without it the title of the distributees to the

personal property after the payment of debts would be none the less sub-
stantial.   This is recognized even at common law.   In Cooper v. Cooper
(L. R. 7, H. L. 53; s. c., 30 L. T. N. S., 409), the Lord Chancellor says:
"The rule of the Statute of Distributions which requires the conversion
of an intestate's estate into money is introduced simply for the benefit of
creditors, and the facility of division among the next of kin; but as re-
gards the substantial title to property the right of the next of kin (subject
only to the claims of creditors) is complete."   The question cannot be
properly resolved upon such a technical principle.

Our statutes provide, that "where any person, having title to any estate
of inheritance, real, personal or mixed, shall die intestate, as to such
estate, and shall leave no surviving husband or wife, it shall descend and
pass in parcenary to his kindred, male and female, in the following
course," etc.   Rev. Stats., art. 1688.   The common law recognizes the
equitable principle of equality among parceners, by requiring them to
bring into hotchpot advancements made in the lifetime of the ancestor.
(2 Blackstone's Com., 191.)   By another article of our statutes (Rev.
Stats., 1694,) the heirs are expressly required to account for advance-
ments, but this provision, it would seem, was inserted out of abundance
of caution.   Advancements are no part of an estate, though the heirs
may bring them into hotchpot and claim their full share of all the prop-
erty.   The debt due by an heir to the estate is a part of the estate and
like other assets is subject to partition and distribution.   The heir owing
the debt must either pay it or take his share in the debt or the debt as a
part of his share, as the case may be.   All the courts, except those which
adhere to the theory that it is a race of diligence between the administra-
tor and other creditors of the heir who is indebted to the estate, hold that
a creditor of such heir can acquire no better right in the estate than that
held by the heir himself.   Since when the heir owes the estate more than
the value of his share and does not pay his debt he has no interest in the
other property of the estate, it necessarily follows, as we think, that a
creditor, by a sale and purchase under judicial process of his nominal in-
terest, can acquire no right in the property.

Counsel for appellants have presented an able argument based upon
our community laws and the quasi-partnership character of the relation
of the husband and wife in respect to the community property, but we
have not found it necessary to examine that question.

We are of the opinion that the first question certified should be an-
swered in the affirmative and that the second should be answered in the
negative.