# Wytheville.

## LELA BRUCE AND OTHERS v. MEREDITH FARRAR AND OTHERS.

June 18, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Gregory, JJ.

The opinion states the case.

*Allen & Jefferson,* for the appellants.

*J. Kent Early* and *Chas. J. Faulkner,* for the appellees.

CAMPBELL, J., delivered the opinion of the court.

Appellants, Lela Bruce, Ales Bruce and Alma Jones, filed their bill alleging that their father, J. A. Farrar, died intestate, seized and possessed of a tract of land containing 376¾ acres, and cash and tangible property amounting to $1,243.43; that decedent left as his heirs and distributees, a widow, Ellen Farrar, appellants and two sons, Meredith Farrar and J. S. Farrar; that at the time of his death, Meredith and J. S. Farrar were indebted to decedent by simple contract debts evidenced by notes in an amount exceeding or equalling the value of their undivided interests in the real estate of which decedent died seized and possessed; that at the time of J. A. Farrar's death,

Meredith and J. S. Farrar were also indebted in large amounts to Pennington, Owen and Ralls, First State Bank of Chase City, and others; that judgments have been obtained and duly docketed—the judgment of Pennington, Owen and Ralls prior to, and the other judgments subsequent to, the death of J. A. Farrar; that J. S. Farrar departed this life subsequent to the death of J. A. Farrar; that the creditors of Meredith and J. S. Farrar are seeking to subject their respective interests in the real estate to the payment of their debts.

The bill prays, among other things, that the estate of J. A. Farrar, deceased, both personal and real, be administered by the court and distributed among his heirs at law; that the indebtedness of Meredith and J. S. Farrar to the estate be ascertained and deducted from their share of the estate before their creditors are permitted to subject their respective interests in the estate to the payment of the judgment liens.

The cause was referred to a master commissioner, who, among other things, was required to report the respective proportions in which the heirs at law of J. A. Farrar were entitled to share or participate in the distribution of the estate both real and personal. The commissioner reported that the indebtedness of Meredith and J. S. Farrar to the estate creates an equitable lien on their interest in decedent's real estate superior to the judgment liens docketed against them.

Pennington, Owen and Ralls, and First National Bank, on behalf of themselves and all other lien creditors, excepted to the finding of the commissioner on the ground that the lien debts of record against the interest of Meredith and J. S. Farrar in the real estate of decedent are superior in dignity to the simple contract debts due by them to the estate, and that the lien creditors are entitled to priority in payment. The chancellor sustained the exception to the report of the commissioner, and decreed that the lien creditors are entitled to have priority in payment out of the interests of Meredith and

J. S. Farrar in the real estate they inherited from their deceased father, when the same is sold.

The ruling and judgment of the court is assigned as error.

Appellants admit in their petition for an appeal that the transaction between the decedent and his two sons created the relation of debtor and creditor, and therefore no question of advancement, as is provided for by section 5278 of the Code, is involved in this case.

In Virginia it is provided by statute, section 5264 of the Code: "When any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in parcenary to such of his kindred, male and female, as are not alien enemies, in the following course: First, to his children and their descendants: * * *"

In the exercise of his right of appointment, a devisor having title to real estate may name the executor of his estate, and such personal representative is clothed with such legal powers as the will confers. If the will so provides, he has dominion over the real as well as the personal estate. The executor is purely the creature of the devisor. On the other hand, when any person having title to any real estate of inheritance dies intestate, such real estate descends and passes, under the statute of descent, directly to the heir, without the intervention of a personal representative, subject only to the debts of the ancestor. If it becomes necessary to administer the personal estate of the decedent in case of intestacy, such estate is administered by an administrator—a personal representative created by law. The administrator has no control whatever over the real estate, and his duties relate only to the administration of the personal estate.

The main contention of appellants is that the law favors the equal distribution of the decedent's estate among those entitled thereto, and therefore the administrator has the right to set off the debts owing by the sons, upon the principle of an equitable lien.

No Virginia authority has been found to sustain this contention. In other jurisdictions, the question as to the superiority of legal over equitable liens has frequently arisen and the decisions are in hopeless conflict.

One line of cases holds that it is the policy of the law, that since realty and personalty pass to the same persons, they are to be considered as one common fund, and the heir indebted to the estate takes the real estate, burdened with the right of retainer or set-off, or else charged with an equitable lien in favor of the other heirs. See authorities cited in the note of 7 Anno. Cases, p. 563.

The other line of cases holds that upon the death of the ancestor, real estate descends directly to the heir, subject only to statutory regulations regarding decedent's debts; that the administrator is not concerned with the realty of decedent; that the indebtedness of the heir to the estate cannot be set off against his interest in the realty; that there is no equitable lien on real estate acquired by inheritance for simple contract debts due decedent.

In *Smith's Ex'rs* v. *Hardy*, 153 Va. 744, 151 S. E. 171, 173, Mr. Justice Holt, dealing with the right of executors to off-set the amount going to a distributee against a debt due by the distributee to the estate, said:

"When an heir or distributee is indebted to his decedent's estate the amount of such indebtedness should ordinarily be deducted by the executors or administrators from his share therein." This we conceive to be the true rule affecting the right of the distributee to share in the distribution of the personal estate of the decedent, but it sheds no light on the question herein involved.

In *Marvin* v. *Bowlby*, 142 Mich. 245, 105 N. W. 751, 754, 4 L. R. A. (N. S.) 189, 113 Am. St. Rep. 574, 7 Ann. Cas. 559, the facts are somewhat similar to the facts in the case at bar. Jacob Bowlby died leaving real and personal estate. Elmer Bowlby, his son, owed his father $3,362.62, for which

the administrator obtained a judgment against him, but before its lien attached, the said Elmer had executed mortgages on a portion of his interest in his father's real estate. The administrator filed a bill alleging that the personal estate of his decedent had been exhausted in the payment of debts; that the real estate was in his possession as administrator, and it would be necessary to sell the same; that the mortgages executed by Elmer Bowlby constituted a cloud on the title to this real estate, and that inasmuch as he was insolvent, it would be necessary to apply his distributive share in the real estate to the judgment which complainant had obtained against him, and complainant prayed that this might be done and the mortgages set aside as clouds. Defendant demurred on the ground, among others, that no case was made by the bill entitling complainant to relief in equity. After reviewing a number of authorities on both sides, the court said:

"It is a recognized doctrine that the distributive share derived from personal property of an heir indebted to an estate may be retained by the administrator in payment of such debt. * * * The doctrine is founded upon principle as well as upon authority. It is, in fact, the collection of a debt due the estate. Personal estate is assets in the hands of the administrator. He is required by law to convert personal property into money, to collect all debts due the estate from all debtors, including heirs. The heir has no title or claim to personal estate except a distributive share in the surplus after payment of debts and expenses of administration.

"No such doctrine has prevailed as to real estate. The title to the real estate vests in the heir at the date of the death of the ancestor. Real estate is not assets in the hands of a personal representative, and, unless otherwise charged by the terms of a will, is subject only to the contingency of a sale of so much thereof as may be necessary to pay the debts of the estate in case there is not sufficient personal estate for that purpose. This statutory contingency is a modification of the

common law, and no sale of real estate to pay debts of the estate could be made before this modification. It has been held repeatedly, not only that no sale of real estate can be made except for this purpose, but also that only so much of the real estate can be sold as may be necessary for that purpose, and that where, because of the indivisibility of real estate, the whole must be sold, the surplus, by the doctrine of equitable conversion, is considered as real estate, and as such goes to the heirs. There is one recognized exception to the general rule above stated. Indebtedness of the heir to the estate which may be held as an advancement may be considered in the division of real estate among heirs. The recent cases cited as supporting complainant's contention are not based upon authority. The Texas case [*Oksheer* v. *Nave*, 90 Tex. 568, 40 S. W. 7, 37 L. R. A. 98] is the only one which goes to the full extent claimed by complainant, and that case is based upon the argument in the case of *Akerman, supra* [3 L. R. 1891 Ch. Div. 212], wherein the court expressly stated: 'I am not deciding a case where there is a mere gift of real estate * * *. But here I am dealing with a case such as I have mentioned—with a general fund, made up of proceeds of sale of real estate, and proceeds of conversion of personal estate.' The other cases relied upon are where surplus from the real estate has been in the hands of the personal representative for distribution, and the doctrine of equitable conversion has not been recognized, or where some statutory provision has influenced the decision. The great weight of the authorities hold the contrary doctrine."

To the same effect is the opinion in *La Foy* v. *La Foy*, 43 N. J. Eq. 206, 10 Atl. 266, 3 Am. St. Rep. 302, a case in which it was attempted to charge a debt of a devisee upon lands devised to him by the testator, there being no language in the will making such a debt a charge. The court said:

"The devisee of lands occupies no such relation to the executor as that which exists between legatee and executor. No act

is necessary on the part of the executor to put the devisee in full enjoyment of the estate devised. The opportunity, therefore, could not arise for the executor to retain the debt of the devisee to the testator out of any demand which the devisee might seek to enforce against the executor. If such a charge attaches against the land devised, it would be necessary for the executor to establish it by proceedings in which he is the actor. After diligent search, I have been unable to find a case in which an attempt has been made to charge a devise of lands with a debt due from the devisee to the testator, in the absence of language in the will manifesting the purpose of the testator to do so."

The same doctrine obtains in Massachusetts, as will appear from the following language of the court in *Dearborn* v. *Preston, 7* Allen, 192:

"* * * the rule of law upon the subject is so well known and established that there can be no doubt of the legal right of a devisee of real estate to take and hold it absolutely, free from any lien or charge of encumbrance as security for anything which he owed to the testator, and may still owe to his legal representatives. It was very early determined that in the division among the heirs of the real estate of a person who died intestate, no deduction would be made from the share of any one of them for or on account of any debt due from him to the intestate, and that there was no lien or charge in any form subsisting upon such share as security for such debt, or which could in any way be enforced towards the payment of it."

The Arkansas court deals with the subject thus in *Wheeler, etc., Co.* v. *Knox, 136* Ark. 95, 206 S. W. 46, 48:

"The conflict existing in the decisions of other States cannot be entirely reconciled. The courts themselves are divided as to where the weight of authority lies, as will be discovered by reference to the following authorities" (citing the principal cases). "In this State, it is firmly established that the real estate of the intestate descends directly to the heirs upon the

death of the ancestor, subject to the statutory exceptions. There is no statute incumbering an heir's interest in real estate with his indebtedness to the ancestor. With these two guide-posts, it seems but a step in the process of logic to determine that the heir's interest in real estate descends to him free from his general debts to his intestate, and that it is unnecessary to enter upon the uncertain course of determining where the general authority lies. It is insisted strenuously by appellees that the great weight of authority sustains the equitable doctrine of off-set or retainer in the settlement of estates between heirs. In support of this contention a number of authorities are cited. Most of the cases cited, however, pertain to a fund held by administrators or executors and do not pertain to real estate. In some of the cases cited by appellees it is pointed out that the rule is not the same with reference to the two classes of property. It seems that in the States where the doctrine of equitable off-set or retainer is applied to both classes of property, it is because the statute of the State makes no distinction in the descent of personalty and realty. * * * In Arkansas, the distinctions between the two classes of property have been preserved. An administrator takes charge of the personalty for the purpose of administering on the estate. Not so with the realty. Unless it becomes necessary to appropriate real property to pay the indebtedness of the estate, the administrator cannot even take possession of it. It does not concern him, because lands are not administered through him. Lands descend in Arkansas directly to the heir, subject to the exceptions provided in the statute of descents and distributions."

In *Manning's Ex'r* v. *Brown* (N. J. Err. & App.), 20 Atl. 381, the court said:

"I think there are cases holding that as between the administrator, having in his hands the personal assets of the intestate, and the distributee of the estate, such administrator may retain so much of the distributee's share as will satisfy the indebtedness of a distributee to the intestate. But this is not such a case. The administrator is not in possession of these

funds for distribution. Although the case of *La Foy* v. *La Foy*, 43 N. J. Eq. 207, 10 Atl. 266 [3 Am. St. Rep. 302], determined the right of an executor to retain the debt of a devisee of land only, the principle there laid down ought to control this case. The debt of the heir at law to the intestate did not become a charge upon the land. Immediately upon the death of the intestate the judgment in favor of Manning against Baldwin C. Brown became a lien upon his interest in the land; and, if any of the surplus remains after the charge above stated is first satisfied, it will be subject to the payment of the judgment of the said Manning."

In an opinion filed with the record, the learned chancellor, Honorable Robert A. Hutcheson, reaches this conclusion:

"I am of the opinion that the cases following the doctrine of *Marvin* v. *Bowlby* are more in harmony with the recognized principles of Virginia law on the subject of liens, and of descent and distribution, than the contrary school. It will be noticed in the quotations from cases holding the opposite view (and the annotations on the subject in A. L. R. state that it is generally true of cases taking that view), that the statutes of descent and distribution in these States make no distinction between real and personal property, but both are considered as one common mass or fund and pass alike into the possession and control of an administrator, or probate court, for the purpose of administration and of distribution of the surplus among heirs. In Virginia the whole personal estate goes into the hands of an administrator and nothing passes to the distributees unless and until all debts of the decedent have been paid and the costs of administration; then, if there is a surplus, it is divided among the same persons and in the same proportions as real estate. The real estate descends directly to the heirs in parcenary at the moment of the death of the ancestor, but subject to the contingency that if personal assets are not sufficient for the payment of debts, creditors may bring a suit in equity for a sale of so much of the real estate as may be necessary for that purpose. Under this state of the law,

there is no opportunity, as was said in *La Foy* v. *La Foy, supra,* for the application of the doctrine of 'retainer,' or 'set-off.' In order that these principles may be applicable, there must be a mutual and reciprocal indebtedness of the parties, the one to the other, which does not exist in this case. Meredith Farrar is indebted to the administrator of his father, and ultimately to his sisters, but they are not indebted to him and the real estate which he inherits has not come from them. Nor can I agree with the Texas court that 'broad principles of equity' demand that real estate descended to an heir must be declared impressed with a lien in favor of co-heirs for a simple contract debt due the ancestor, which such co-heirs have come to own in the course of administration. The consideration for such a debt has not come from them, and they have paid nothing of value for it; upon what theory ought their rights against a co-heir's real estate be held superior to the rights of creditors who have parted with value for their debts and have exercised the diligence which the law commands in reducing their claims to judgment and obtaining statutory liens? However desirable equality of inheritance may be, it ought not to be brought about at the price of injustice to creditors. The inequality in this case, if it exists, is not the fault of the law, but comes from the fact that J. A. Farrar did not care to take judgments against his sons and make their debts to him a lien on anything they may own, while other creditors did. His daughters own what he left them, and the law gives them —their proportionate shares in his real estate, and the surplus of his personal estate, the latter being a simple contract debt against their brothers.

"The exceptions to the commissioner's report will be sustained."

The above conclusion meets with our approval and we adopt it as a part of this opinion.

We find no error in the decree of the Circuit Court and it must be affirmed.

*Affirmed.*