McDANIEL v. WILLIS et al.

No. 11045.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 26, 1941.

Rehearing Denied Dec. 23, 1941.

J. W. Ragsdale, of Victoria, and H. W. Wallace, of Cuero, for appellant.

Boone, Henderson, Boone & Davis, of Corpus Christi, and W. B. Moss, of Sinton, for appellees.

NORVELL, Justice.

This is an appeal from a judgment of the District Court of San Patricio County which adjusted various claims and equities between the parties and partitioned the property formerly held by C. McDaniel among his heirs, who were his children. W. C. McDaniel is the appellant. The appellees are Sallie Willis, Dollie Whetstone, Emma Schmalstieg and E. C. McDaniel.

The issues involved relate to W. C. McDaniel's alleged accountability to the estate of his deceased father upon certain items, to-wit:

(1) Two promissory notes executed by W. C. McDaniel to C. McDaniel, one for the sum of $2,500, dated October 17, 1928, due August 15, 1929, and the other for $1,000, dated March 31, 1931, due September 1, 1931.

(2) One-half the sum of $1,000 belonging to·the estate of James McDaniel, who died intestate without issue, one-half of the claim in and to said $1,000 consequently going to C. McDaniel the father of the said James McDaniel.

(3) The proceeds, amounting to the sum of $7,600 received by W. C. McDaniel from the sale of certain United States Savings Bonds.

The case was submitted to the jury upon special issues, and judgment entered partitioning the properties among the parties, and charging the items above mentioned against the share of W. C. McDaniel.

The judgment further avoided a farming lease agreement executed by C. McDaniel, on the 14th day of November, 1939, under the terms of which the said C. McDaniel purported to lease 160 acres of land to W. C. McDaniel for a period of six years.

Appellant contends that the district court was without jurisdiction in this case, as administration of the estate of C. McDaniel was pending in the county court of San Patricio County.

■ C. McDaniel died on November 24, 1939. E. C. McDaniel (an appellee here) made application for appointment as permanent administrator, which was opposed by W. C. McDaniel (the appellant here). It appears that on the 27th day of November, 1939, E. C. McDaniel was appointed temporary administrator of said estate, with certain limited and special powers. On December 11, 1939, the County Court entered an order making the temporary appointment of an administrator permanent. From this order, W. C. McDaniel appealed to the district court. On September 23, 1940, after the present suit was filed, the district court rendered judgment in the appeal from the probate court, finding that there was no necessity for the granting or issuing of letters of permanent administration upon the estate of C. McDaniel, and denying the application there-

for; said applicant having admitted that there was no necessity for administration. This order was certified to the probate court for observance. Thereafter, on the same day, the trial court overruled a plea in abatement in this case, which set up the pendency of the probate proceedings. There was no error in this action. The general rule applicable to this situation is stated by this court in Zamora v. Gonzalez, 128 S.W.2d 166, writ refused, but this case differs from the Zamora case in that here we have an adjudication by a court of competent jurisdiction that there was no necessity for administration. This being true, the mere possibility that E. C. McDaniel as temporary administrator may be called upon to make some further report to the probate court, can not defeat the district court's jurisdiction in this case. Appellant's first point is overruled.

We next consider appellant's contention that his liability upon the two promissory notes above mentioned, as well as his liability upon the James McDaniel $500 item, was barred by the statute of limitations. It appears that had C. McDaniel prior to his death attempted to assert a claim against W. C. McDaniel upon the notes involved, such claim could have been defeated by pleading the four-year statute of limitations, Article 5527, Vernon's Ann. Civ.Stats., as the last note matured in September, 1931.

The alleged liability to the James McDaniel estate arose in the following manner:

On October 5, 1927, said James McDaniel, a son of C. McDaniel and brother of the parties to this suit, was adjudged non compos mentis, but no guardian of his estate was appointed. E. C. McDaniel, with the apparent acquiescence of the members of the family, took charge of James McDaniel's property and sold the same for $1,000. E. C. McDaniel then. let W. C. McDaniel have this money, under an implied agreement that it would be returned to E. C. McDaniel for the benefit of James McDaniel. James McDaniel remained of unsound mind until his death, intestate, on January 24, 1938. C. McDaniel thereupon became entitled to one-half of said claim.

■■ We hold that this claim did not become barred by the two-year statute of limitations (Art. 5526, Vernon's Ann.Civ. Stats.) prior to the death of James McDaniel. It was valid and enforcible when

it became the property of C. McDaniel. Massengale v. Barnes, Tex.Civ.App., 106 S.W.2d 368, writ refused. Thereafter, in our opinion, no valid limitation defense accrued against the claim. However, if we be mistaken in this, such claim would be governed by the same rules as those applicable to the claim evidenced by the two W. C. McDaniel notes.

The question presented with reference to said claims may be thus stated:

In a partition suit between heirs of a decedent, is an indebtedness due by one of the heirs to the decedent properly chargeable against the interest in and to the estate held by said heir, even though such indebtedness would have been subject to a defense of limitation in the hands of the decedent?

Appellant relies primarily upon Luscher v. Security Trust Co., 178 Ky. 593, 199 S. W. 613, L.R.A.1918C, 615, which admittedly supports his position. There is undoubtedly a conflict of decision upon the point (see note L.R.A.1918C, 619), and the weight of authority seems to be contrary to the holding of the Kentucky Court of Appeals. However that may be, we are of the opinion that the Texas authorities compel a holding supporting the trial court's ruling. While Oxsheer v. Nave, 90 Tex. 568, 40 S.W. 7, 37 L.R.A. 98, does not specifically deal with the question of limitation, it does hold in accordance with the English rule "that a legatee who was indebted to the estate of the testator could only demand the balance of the legacy remaining after the subtraction of his debt." Judge Gaines, the writer of the opinion, also refused to recognize a distinction in principle between a legatee who takes by bounty of the testator, and a distributee who takes as an heir by operation of law, and holds that the doctrine above stated applies to both. Further, it is held that this right to have the debt of the legatee or distributee charged against him in the adjustment of the legacy or the distributive share is one resting upon the broad principles of equity. The rule, as stated by Vice-Chancellor Bacon in Ackerman's Case, 3 L.R. Ch.Div. 212, is quoted with approval; viz., "If there is a debt payable by a residuary legatee under such circumstances as exist here, that debt must, for the purpose of computation, be included in the residue, and—again for the purpose of computation—treated as a part of the share going to the legatee debtor."

In this suit, appellant W. C. McDaniel is asking for his distributive share of his father's estate in a partition suit. The position occupied by him in the lower court is immaterial. Hanrick v. Gurley, 93 Tex. 458, 54 S.W. 347, 354. Under the rule stated he must account for debts owed by him to his father's estate. Does said debt exist? It is well settled in this State that "statutes of limitation abrogate remedies. The debt is not destroyed." Orndorff v. State, Tex.Civ.App., 108 S.W. 2d 206, 212, writ refused; American National Ins. Co. v. Hicks, Tex.Com.App., 35 S.W.2d 128, 75 A.L.R. 623; Cathey v. Weaver, Tex.Civ.App., 193 S.W. 490, affirmed 111 Tex. 515, 242 S.W. 447. We therefore conclude that there was no error in the trial court's judgment requiring W. E. McDaniel to account for the debts owed by him to his father in this partition proceeding. Hanrick v. Gurley, supra. We overrule appellant's second and third points.

We next consider that part of the judgment requiring W. C. McDaniel to account for the proceeds of the sale of certain United States Savings Bonds, together with the provision cancelling the farm lease involved.

It was alleged by appellees that these bonds were purchased during October, 1938, by C. McDaniel and registered so as to be payable to W. C. McDaniel, as beneficiary, upon the death of the said C. McDaniel. Appellees contend that said W. C. McDaniel was named beneficiary as a result of undue and improper influence exerted upon the said C. McDaniel by the appellant, and further that said C. McDaniel was incapable of understanding and did not understand the nature, character and extent of the transaction which was to operate as a gift to said W. C. McDaniel.

Appellees also assert that C. McDaniel did not have the legal capacity to make the lease of November 14, 1939, and that its execution was accomplished by undue and improper influence exercised by appellant.

In our opinion the evidence is sufficient to support the jury's findings upon the issue of a want of mental capacity on the part of the said C. McDaniel, as well as the findings relating to the allegations of "undue influence." Appellant's ninth and tenth points are overruled.

We also overrule appellant's eighth point. There was no error in the trial

court's definition of undue influence. The definition given was expressly approved as proper in Stribling v. Stribling, Tex.Civ. App., 85 S.W.2d 315, 322.

Appellant contends that the judgment must be reversed because the trial court in submitting certain issues commencing, "Do you find from a preponderance of the evidence, etc.," also instructed the jury to answer "he did not" or "he did," rather than "yes" or "no." Obviously, the trial court sought to avoid the confusion sometimes present in the submission of issues in which the burden of proof rests upon the one asserting a negative. In our opinion the form of submission adopted did not shift the burden of proof and was not confusing. Traders & Gen. 141 S.W.2d 312. Appellant's seventh point is overruled.

Appellant further complains of the action of the trial court in permitting Dr. J. M. Boykin to testify, over appellant's objection, that in the opinion of the witness C. McDaniel was mentally incapable of intelligently transacting business. Appellant's specific objections were that the witness was not qualified as a mental expert, and that the answer invaded the province of the jury and was an opinion on one of the issues to be determined by the jury. We are of the opinion that under the facts of this case there was no merit in the first objection; the second objection, however, presents a more serious matter for consideration. The leading case upon the point is Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 36 L.R.A. 64. In the recent case of Chambers v. Winn, Tex.Com.App., 154 S.W.2d 454, Judge Taylor, in an opinion adopted by the Supreme Court, says:

"The rule applicable as to the relevancy and probative character of the testimony stated in Campbell v. Campbell, Tex.Civ. App., 215 S.W. 134, 138, writ refused, and predicated upon its more general pronouncement in Brown v. Mitchell et al., supra, is as follows:

" 'We understand the rule to be that witnesses, whether experts or laymen, may, having first stated their observation or knowledge of the habits, conduct, expressions, peculiarities, disposition, temper, or character of the person, in turn may give their opinion as to whether he was mentally capable of knowing or understanding the nature and effect of his acts, etc., as distinguished from his opinion as to whether the testator possessed the degree of intelligence to do what he did do.' "

In Pickering v. Harris, Tex.Com.App., 23 S.W.2d 316 (holdings approved by the Supreme Court), Judge Critz points out objectionable questions and answers, of the nature here under discussion, are condemned for two reasons, (a) they call for legal conclusions; and (b) invade the province of the jury. It is further stated that "there is no difference between permitting a witness to testify to a number of legal conclusions the sum total of which make up the ultimate fact to be decided, and permitting such witness to testify to the ultimate fact to begin with."

It would therefore seem that the issue involved can not in all cases be resolved upon the form of the question and nature of the answer alone. Conceivably, a certain question and answer may express an opinion as to the mental condition of a party under the facts of one case, while a similar question and answer may involve a conclusion as to legal capacity under the facts of another case—it may constitute one conclusion which taken with others make up the ultimate fact to be decided by the jury.

Dr. Boykin's testimony as to the mental and physical condition of C. McDaniel prior to his death was full and complete. C. McDaniel was 78 years old when he died and had been in failing health during the year 1938. He consulted Dr. Boykin about July, 1938, when, according to the doctor, he was threatened with impending heart failure and was suffering from impairment of the kidneys, hardening of the arteries and dropsy. On July 9, 1939, McDaniel suffered an apoplectic stroke which resulted in a partial paralysis of one leg. In the latter part of August of the same year McDaniel suffered a second stroke which left him very depressed mentally and physically. He was thereafter unable to talk distinctly, he couldn't swallow and was semiconscious a great deal of the time. The doctor's opinion as to McDaniel's ability to transact business was based upon his personal knowledge of McDaniel's condition from repeated and numerous observations over a period of some sixteen months. The doctor's testimony can not be construed as invading the province of the jury insofar as the bond transaction of October, 1938, is concerned.

His testimony as to the history of C. McDaniel's last illness was of course material to the issue, and from it, as well as other testimony in the record, the jury was justified in concluding that C. McDaniel lacked the legal capacity to understand the nature of his act on said date, or was particularly susceptible to domination by the exercise of undue influence. Dr. Boykin's testimony can not, however, be construed as in substance stating an objectionable conclusion relating to this particular transaction.

Insofar as the lease transaction was concerned, we are also of the opinion that, considering the witness' testimony as a whole, the doctor's observations with reference to C. McDaniel's ability to transact business are properly regarded as descriptive of a mental condition and not as conclusions relating to legal capacity. Appellant's fourth point is overruled. No reversible error is disclosed in the testimony of Mrs. Schmalstieg. The answer of the witness is in our opinion responsive to the question propounded by counsel.

Appellant's sixth point does not present a reversible error and is accordingly overruled.

We also overrule appellant's fifth and eleventh points upon authority of Himes v. Himes, Tex.Civ.App., 55 S.W.2d 181. The eleventh point seeks to present a "fundamental error." The error, if any there be, is not fundamental under this court's holding in Oil Country Pipe & Supply Co. v. Carter, 143 S.W.2d 831.

The judgment of the trial court is affirmed.