BUTLER, Sheriff, et al. v. LOLLAR et al. (No. 1867.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 29, 1917.)

1. DESCENT AND DISTRIBUTION ⊗══155 — RIGHTS OF CREDITORS OF HEIRS—EFFECT OF ADVANCEMENT.

Under Rev. Civ. St. art. 2467, relative to bringing advancement into hotchpotch, a father had a legal right during his lifetime to make an advancement to a son that would supersede the son's inheritable interest in the estate remaining at the death of the father, and where he did so, the son had no interest in the father's estate subject to execution, though there was no record evidence of the fact that he was excluded from any share in the estate.

2. FRAUDS, STATUTE OF ⊗══129(9)—PART PERFORMANCE—POSSESSION AND IMPROVEMENTS.

A parol gift of land from a father to his son followed by actual possession of the premises by the son, and the making of valuable improvements, invested him with a good title, without any written conveyance.

3. DESCENT AND DISTRIBUTION ⊗══117—ADVANCEMENTS—SUFFICIENCY OF EVIDENCE.

Where a father gave his son a tract of 200 acres of land, but executed no conveyance, and the son went into possession, made valuable improvements, and occupied the land as a homestead for many years, and continuously until his father's death, and paid the taxes and claimed the land as his own, and after his death it was agreed by the widow and children that he had no interest in any of the lands owned by the father at the time of his death, and that the tract so given to him was an advancement, the facts justified the trial court in finding that the son received such land as an advancement and had no further interest in the father's estate.

Appeal from District Court, Hopkins County; Wm. Pierson, Judge.

Suit by Lula Lollar and others against J. B. Butler, Sheriff, and others. From a

decree in favor of plaintiffs, defendants appeal. Affirmed.

F. E. Scott, of Sulphur Springs, for appellants. Thornton & Thornton, of Sulphur Springs, for appellees.

HODGES, J. This appeal is from a decree enjoining the sale under execution of an undivided interest in certain tracts of land levied on as the property of J. B. Sparks. In February, 1916, J. N. Sparks died intestate, leaving a community interest in 3,000 acres of land. He was survived by his wife and eight children, among whom was J. B. Sparks, a son. Some time after the death of J. N. Sparks certain judgment creditors of J. B. Sparks had executions issued and levied on what they treated as his undivided interest in the real estate left by his father. The appellees, who were the children and heirs of Sparks, Sr., brought this and other similar suits, asking for injunctions restraining the sale of any portion of the land seized, on the ground that J. B. Sparks had no interest therein, and that the sale would constitute a cloud upon their titles. In a trial before the court without a jury the writ was granted and the sale restrained.

The record discloses a state of facts about which there is little or no dispute. About 16 years prior to his death J. N. Sparks gave to his son, J. B. Sparks a tract of 200 acres of land, but executed no deed of conveyance. J. B. Sparks went into possession, made valuable improvements on the land, and occupied it as a homestead for many years and continuously up to the date of his father's death. He also paid the taxes and claimed the land as his own. Testimony was presented showing that J. N. Sparks had told others that he had given this tract of land to his son, but withheld the deed in order to prevent the latter from selling it. Soon after the death of J. N. Sparks, and subsequent to the levy of the executions referred to above, his children had a friendly partition suit for the purpose of dividing their father's estate. In that suit it was agreed by the parties in interest that J. B. Sparks had no interest in any of the lands formerly owned by their father except the 200 acres above mentioned; that this portion had been given to J. B. Sparks during the lifetime of their ancestor as an advancement.

[1-3] The appellants contend that, if prior to his death J. N. Sparks had made an advancement which excluded his son, J. B. Sparks, from any share in the residue of the estate, there was no record evidence of that fact of which the creditors of J. B. Sparks were bound to take notice, and they had a right to seize any apparent interest of their debtor in the paternal estate. The proposition seems to be that upon the death of the ancestor an estate which apparently descends and vests in an heir is subject to seizure by a creditor in the absence of some record evidence that the heir had parted with his interest before the levy was made. The rule invoked applies when the debtor whose property is seized has once owned an estate and subsequently parts with his title by an unrecorded conveyance. But that rule has no application to situations where the property seized never at any time really belonged to the debtor. J. N. Sparks had a legal right during his lifetime to make an advancement to his son that would supersede the latter's inheritable interest in what estate remained at the death of the ancestor. Revised Civil Statutes, art. 2467; Morrison v. Morrison, 43 Tex. Civ. App. 339, 96 S. W. 100; Oxsheer v. Nave, 90 Tex. 568, 40 S. W. 7, 37 L. R. A. 98. This having been done, as was evidently found by the court, J. B. Sparks had no interest in his father's estate, and the creditors seized property to which he had never owned a title. In this instance the gift of the 200 acres to J. B. Sparks from his father was by parol, but the evidence warranted the court in finding that it was followed by actual possession of the premises and the making of valuable improvements. These were sufficient to invest the grantee with a good title without any written conveyance. The facts, we think, are such as to justify the trial court in finding that J. B. Sparks received from his father the 200 acres of land which he used as his homestead as an advancement, and had no further interest in the estate.

The judgment of the district court is affirmed.