woodward 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00040-CV







M. Kenneth Woodward, Jr., Appellant



v.



Bruce W. Jaster, Individually, and as Independent Administrator of the Estate of


Genelda Noma Koenig Jaster, Deceased, The Teresa Rose Jaster Streza Trust, Teresa


Rose Jaster Streza, and Loyd E. Sullivan and Wife, Cynthia A. Sullivan, Appellees







FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT


NO. 94V-304, HONORABLE DAN R. BECK, JUDGE PRESIDING








 After the administration of the estate of Genelda Jaster, appellant, M. Kenneth Woodward,
Jr., brought suit in district court against the independent administrator, the beneficiaries and the purchasers
of real property 1) contending the defendants committed fraud and conspiracy against him in an attempt
to defeat his judgment lien; 2) seeking a declaration that the lien still burdened the property; and 3) seeking
judicial foreclosure on the lien. The trial court denied the relief sought and assessed sanctions upon finding
that Woodward's claims were groundless and brought in bad faith. On appeal Woodward contends the
trial court erred in finding that the judgment lien did not attach to the property, in refusing to grant
declaratory relief and in assessing sanctions against him.

 This appeal requires us to decide two primary issues: 1) whether a judgment lien against
the beneficiary of an estate attaches to her interest in estate property; and 2) if so, whether the property
passes encumbered by the lien when sold by the independent administrator to pay debts of the estate. We
conclude that although Woodward's lien attached to the beneficiary's interest in the property, the
independent administrator's authority to sell the property divested the beneficiary of her interest and thus
extinguished the lien. We therefore need not address the point concerning the trial court's refusal to render
declaratory relief. Finally, we conclude that the court abused its discretion by imposing sanctions on
Woodward. Accordingly, we will affirm in part and reverse in part the trial court's judgment.



FACTUAL BACKGROUND


 In a holographic will executed on her death bed in January 1991, Genelda Jaster left the
residue of her estate one-half to her son Bruce W. Jaster and one-half, in trust, to her daughter Teresa Rose
Jaster Streza ("Terry"). Genelda named Jesse Smith as trustee of the spendthrift trust established for
Terry's benefit. (1) The residue included real property located at 454 South Meyer in La Grange ("the
property"). Because the will failed to name a personal representative, the probate court named Bruce as
independent administrator of the estate at the time the will was admitted to probate. (2)

 Within six months Bruce collected Genelda's assets, paid estate debts and expenses and
distributed most of the cash to Terry's trust and himself. Terry, believing there was cash remaining, hired
Woodward as legal counsel to have the court remove Bruce as independent administrator and appoint
Terry instead. (3) When Terry failed to pay his legal fees, Woodward recovered a judgment against the trust
established for Terry's benefit and the trustee, (4) which he abstracted in August 1993 in Fayette County
where the property was located.

 That December Bruce, as administrator, sold the property to Loyd and Cynthia Sullivan. 
The trial court found that new estate debts, created by Terry and her ex-husband, (5) made it necessary for
Bruce to sell the property in order to close the estate. (6) Bruce conveyed the property to the Sullivans with
no mention of Woodward's judgment, although Woodward had notified Bruce's attorney and the title
company of his judgment and his desire to foreclose on the lien.

 After the sale, Woodward brought suit against Bruce, individually and as independent
administrator, Smith, individually and as trustee, the trust, Terry, and the Sullivans. Woodward sought a
declaration that the lien was valid, the sale improper, and judicial foreclosure. In addition he alleged that
Bruce, Smith and Terry conspired to defeat the lien and committed fraud against him by purposely depleting
the funds of the estate so that the property was the only remaining asset from which debts could be
satisfied. (7) Bruce and Smith counterclaimed that the suit was groundless and brought in bad faith warranting
imposition of sanctions and attorneys' fees; the Sullivans brought a cross action against Bruce for breach
of warranty deed and covenants and for violations of the Deceptive Trade Practices Act. The court denied
Bruce's motion for summary judgment and issued an order granting his special exceptions alleging that
declaratory relief was not appropriate. (8) After reconsidering Bruce's motion for summary judgment, the
court affirmed its prior order and proceeded to trial. Before trial Woodward voluntarily nonsuited Smith,
the trustee. The court rendered take-nothing judgments on all of Woodward's claims and on the Sullivans'
cross-claims against Bruce. In addition the court awarded Bruce $31,725 in attorneys' fees as sanctions
after finding that Woodward's suit was groundless and brought in bad faith.




DISCUSSION


 In his first point of error Woodward challenges the trial court's conclusion of law that the
sale by Bruce prevented Woodward's lien from ever attaching to the property. 

 Section 37 of the Texas Probate Code deals with passage of title upon intestacy and under
a will. The pertinent part of that section states



When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such
will . . . shall vest immediately in the devisees or legatees of such estate . . . ; subject,
however, to the payment of the debts of the testator . . . .



Tex. Prob. Code Ann. § 37 (West Supp. 1996). An ownership interest in property vests in a beneficiary
immediately upon the death of the testator. See Kelley v. Marlin, 714 S.W.2d 303, 305-06 (Tex. 1986);
Johnson v. McLaughlin, 840 S.W.2d 668, 671 (Tex. App.--Austin 1992, no writ). The Property Code
provides that an abstract of judgment recorded and indexed in the county where the defendant owns
property constitutes a lien on the property. Tex. Prop. Code Ann. § 52.001 (West 1995). Consequently,
an abstract of judgment against a devisee attaches to the devisee's vested interest in real property during
the administration of the estate. See Gregg v. First Nat'l Bank, 26 S.W.2d 179, 181 (Tex. Comm'n App.
1930, judgm't adopted); Carroll v. Fidelity & Deposit Co., 107 S.W.2d 771, 772 (Tex. Civ.
App.--Eastland 1937, writ ref'd); Butler v. Lollar, 199 S.W. 1176, 1177 (Tex. Civ. App.--Texarkana
1917, no writ). Woodward's abstract of judgment was against the trust and Smith as trustee. As we note
below, the trust's interest was defeasible as was the judgment lien, but, because the trust had a vested
interest in the property at the time the judgment was abstracted, Woodward at one time held a valid
judgment lien against the property. We sustain Woodward's first point of error but do not find it
dispositive.

 In his second point of error, Woodward contends the trial court should have judicially
foreclosed on the property because it passed burdened by his judgment lien when Bruce sold it to the
Sullivans. Woodward contends that 1) the judgment lien was merely inferior to the statutory lien created
by the debts of the estate, or 2) the property was effectively sold by the beneficiary rather than the
independent administrator due to the beneficiary's vested interest in the estate. Woodward further urges
that an independent administrator should not be able to defeat a lien attached to a beneficiary's interest
merely by selling property to pay insignificant debts of the estate. We reject Woodward's arguments and
hold that when an independent administrator sells property pursuant to his authority to satisfy claims against
the estate, the sale divests a beneficiary of her interest and thus extinguishes a lien on the property held by
the beneficiary's creditor.

 Although a beneficiary holds a vested interest in property upon the testator's death, the
administrator holds legal title and a superior right to possess estate property and to dispose of it as
necessary to pay the debts of the estate. Tex. Prob. Code Ann. § 37. If the administrator exercises this
dispositive power, the sale divests the beneficiary of her interest in the property. See Blinn v. McDonald,
46 S.W. 787, 789 (Tex. 1898); Harper v. Swoveland, 591 S.W.2d 629, 630 (Tex. Civ. App.--Dallas
1979, no writ); Freeman v. Banks, 91 S.W.2d 1078, 1079 (Tex. Civ. App.--Fort Worth 1936, writ
ref'd); Laas v. Seidel, 66 S.W. 871, 872 (Tex. Civ. App.--Austin 1902, no writ). 

 Woodward argues that because section 37 states that the beneficiary's vested interest is
"subject . . . to the payment of the debts of the testator," the judgment lien against a beneficiary is merely
inferior in priority to the statutory lien created by the decedent's debts and thus burdens the property when
it is sold by the administrator. While it is true that the decedent's debts create a general statutory lien
against all the property of an estate, Jackson v. Hubert, 234 S.W.2d 414, 418 (Tex. 1950), a
beneficiary's interest is defeasible by the sale of the property to satisfy the statutory lien. See Clemmons
v. McDowell, 12 S.W.2d 955, 956 (Tex. Comm'n App. 1929, judgm't adopted); Patranella v. Smith,
102 S.W.2d 297, 288-89 (Tex. Civ. App.--Waco 1937, writ dism'd). (9) But see Littlefield v. Ungren,
206 S.W.2d 152, 157 (Tex. Civ. App.--Eastland 1947, writ ref'd n.r.e.) (conveyances of mineral interests
by heirs survived subsequent transfer of property by administrator where property was not sold for
payment of estate's debts). 

 Woodward's contention that the beneficiary, not the administrator, effectively conveyed
the property is erroneous. Until the administrator pays all debts owed by the estate and distributes the
property, the beneficiaries do not actually hold legal title to the property. See Cooper v. Loughlin, 13
S.W. 37, 39 (Tex. 1889); Harper, 591 S.W.2d at 630; see also Atlantic Ins. Co. v. Fulfs, 417 S.W.2d
302, 305 (Tex. Civ. App.--Fort Worth 1967, writ ref'd n.r.e.).

 The purpose of administration is to satisfy the decedent's debts and to distribute the
remainder of the estate in accordance with the testator's wishes. See generally William J. Marschall, Jr.,
Independent Administration of Decedents' Estates, 33 Tex. L. Rev. 95, 116 (1954). If the beneficiary's
interest can be divested by a sale to pay debts of the estate, it follows that the sale by the administrator
extinguishes any lien against the beneficiary's interest in the property. (10) See McGriff v. Hazle, 201 S.W.2d
92, 95 (Tex. Civ. App.--Eastland 1947, no writ); see also Rutherford v. Stamper, 60 Tex. 447, 449
(1883); Gregg, 26 S.W.2d at 181.

 In the present case, the deed to the Sullivans recites that Bruce conveyed the property in
his capacity as independent administrator of Genelda's estate. Moreover, the trial court found, and
Woodward does not dispute, that it was necessary for the administrator to sell the property in order to
satisfy estate debts. Because of this unchallenged finding we need not address the hypothetical issue of
whether an administrator may sell property to pay a de minimus debt. The trial court properly concluded
that the sale of the property extinguished Woodward's judgment lien. Accordingly, the property did not
pass to the Sullivans encumbered by the lien. We overrule Woodward's second point of error.

 In light of the foregoing disposition, we need not address Woodward's third point of error
complaining of the trial court's refusal to grant him declaratory relief.




Sanctions

 In his fourth and fifth points of error Woodward contends the trial court erred in finding that
Woodward's allegations against Bruce were groundless and in awarding Bruce his attorneys' fees as
sanctions. 

 Rule 13 authorizes the imposition of sanctions against an attorney, a represented party, or
both, who files a pleading that is both groundless and brought in bad faith. Tex. R. Civ. P. 13; Monroe
v. Grider, 884 S.W.2d 811, 817 (Tex. App.--Dallas 1994, writ denied); New York Underwriters Ins.
v. State Farm, 856 S.W.2d 194, 205 (Tex. App.--Dallas 1993, no writ). Rule 13 defines "groundless"
as having no basis in law or fact and not warranted by good faith argument for the extension, modification,
or reversal of existing law. When determining whether sanctions are appropriate, the trial court must
examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading. 
New York Underwriters, 856 S.W.2d at 205. 

 The imposition of rule 13 sanctions is within the sound discretion of the trial court, and we
set aside that decision only upon a showing of a clear abuse of its discretion. GTE Communications Sys.
Corp. v. Tanner, 856 S.W.2d 725, 730 (Tex. 1993); Monroe, 884 S.W.2d at 816; New York
Underwriters Ins., 856 S.W.2d at 205. In other words, we determine whether such action was arbitrary
or unreasonable. Monroe, 884 S.W.2d at 816. A trial court abuses its discretion in imposing sanctions
only if it bases the order on an erroneous view of the law or a clearly erroneous assessment of the evidence. 
Id. The court may impose sanctions only for good cause, the "particulars" of which must be stated in the
sanctions order. Dyson Descendant Corp. v. Sonat, 861 S.W.2d 942, 950 (Tex. App.--Houston [1st
Dist.] 1993, no writ). In reviewing the imposition of sanctions, we ordinarily look to the particulars of good
cause set out in the sanctions order. (11) Monroe, 884 S.W.2d at 816. 

 We thus turn to an examination of the pleadings, considering only the allegations against
Bruce. (12) Woodward first alleged that he had a valid lien on the property when Bruce conveyed it to the
Sullivans; that the sale constituted a fraudulent conveyance by Bruce; that Bruce and Terry intentionally
depleted the estate funds to defeat the judgment lien; and that Bruce "conspired with [Smith and Terry] to
manipulate the sale and conveyance of the property to the Sullivans in such a manner as to hinder, delay
and defraud [Woodward] . . . and to perpetrate a fraud against him . . ." by defeating the lien.

 Bruce moved for summary judgment on the grounds that, as a matter of law, he properly
exercised his duties as administrator by selling the property to the Sullivans, that the petition lacked factual
allegations pertaining to fraud or conspiracy and the law would not, in any event, support those claims. 
Woodward responded to the motion by averring that Bruce had distributed cash to himself and Terry while
the estate was still incurring debts and had sold the property even after Woodward notified Bruce's attorney
and real estate agent of the existence of his lien and writ of execution. (13) The court overruled the motion
for summary judgment, finding found "that genuine issues of material fact exist in this cause . . . ." 
Subsequently Woodward amended his pleadings, adding factual allegations that Bruce had received from
the sale $52,695.40, only $5,178.77 of which was paid to entities other than himself and the trustee, and
alleging that "[o]nly an insignificant amount of the proceeds of the sale of the Property were needed for
expenses of administration . . ." Woodward further added that it would be unconscionable for Bruce,
Smith, Terry and the trust to retain the proceeds of the sale in excess of his lien; he asked the court to
impose a constructive trust on the proceeds. The court then heard and sustained Bruce's special exceptions
and ordered Woodward to more fully plead the factual allegations of the alleged conspiracy and to confine
his evidence at trial to those allegations. In response Woodward again amended his petition, this time
adding the fact that over the life of the estate Bruce distributed $139,262.81 to himself and Terry's trust,
rewording the allegation that all but $5,178.77 of estate expenses were paid prior to the sale of the
property, and alleging that "through the actions of [Bruce] in depleting the liquid assets of the estate by
distributing almost $140,000 . . . the estate was left with no significant asset other than the Property." As
a final matter the trial court requested the parties to submit briefs summarizing the law supporting their
positions, reconsidered Bruce's motion for summary judgment, and ultimately affirmed its prior decision to
overrule the motion.

 In its judgment stating the particulars for the sanctions, the trial court found that
Woodward's suit was groundless because Bruce had distributed all the cash from the estate before Terry
consulted Woodward and that Woodward knew this due to his legal representation; consequently,
Woodward knew when he filed suit against Bruce that no factual basis existed for a fraud or conspiracy
claim stemming from cash distributions. The court also determined that Woodward presented no evidence
of conspiracy or fraud; that the law was clearly against him and no argument was made for the extension,
modification or reversal of existing law. The judgment also recites that the suit was brought in bad faith
because 1) Woodward persisted in taking the suit to trial even after he nonsuited Smith, an alleged co-conspirator; 2) Woodward admitted in his pleadings that it was necessary for Bruce to sell the property
to pay debts of the estate; and 3) the suit was merely an effort to extract money from Bruce who was
neither indebted nor legally liable to Woodward. (14)

 These particulars present an unfavorable view of Woodward's motive and actions, but after
examining Woodward's pleadings and the facts available to him when he filed suit, we conclude that the
trial court abused its discretion in imposing sanctions. While the factual allegations against Bruce were
slight, when a trial court has denied summary judgment not once but twice and proceeded to trial, it is
unreasonable for the court to assess sanctions on the ground that the pleadings had no factual basis. 

 Moreover, a trial court may not base rule 13 sanctions on the legal merit of a pleading or
motion. Monroe, 884 S.W.2d 811, 817 (Tex. App.--Dallas 1994, writ denied). As one court has stated:



Innovative changes in the law or applications of the law must by necessity come from
creative and innovative sources. For the most part these changes resulted from lawyers
advocating positions that may have had little or no basis in existing law. By their very
definition, changes in the law are different from and in disagreement with what has been
historically accepted. We cannot allow rule 13 to have a chilling effect on those who seek
change in legal precedent.



See Dyson Descendant Corp., 861 S.W.2d at 951 (footnote omitted). Woodward sought a declaratory
judgment determining the propriety of Bruce's actions as administrator, pleaded that the sale constituted
a fraudulent conveyance, and sought imposition of a constructive trust on the proceeds. We discern from
these pleadings good faith arguments to impose a duty on an independent administrator to hold proceeds
from a sale of estate property for the beneficiary's judgment creditors, or to defeat a sale of property to pay
seemingly insignificant debts of the estate. The trial court's rejection of a plea for the extension of the law
does not render frivolous the litigant's pleadings. Although Woodward's claims against Bruce now seem
questionable, we do not think this situation presents the kind of egregious circumstances which rule 13 was
enacted to protect against. See id. We conclude that the trial court abused its discretion; accordingly, we
sustain points of error four and five. 



CONCLUSION


 Although Woodward's judgment lien attached to the trust's interest in the property, the sale
by Bruce divested the trust of its interest in the property and extinguished the lien. We therefore affirm the
part of the judgment stating that Woodward take nothing. Because we find the sanctions to be an abuse
of discretion, we reverse the part of the judgment imposing sanctions on Woodward and render judgment
that Bruce W. Jaster take nothing.



 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed in Part; Reversed and Rendered in Part

Filed: November 6, 1996

Publish
1.   The trust terms allowed Smith to distribute income and principal as he deemed necessary
and to terminate the trust when he felt appropriate.
2.   Where a testator names no executor in her will, the beneficiaries can agree on having an
independent administration of the estate. The independent administrator possesses the same
powers as an independent executor; after the court admits the will to probate and the administrator files
an inventory, appraisement and list of claims of the estate, no further judicial action is required to
administer the estate. Tex. Prob. Code Ann. §§ 3(q), 145(d) (West 1980). 
3.   Woodward filed a motion alleging that Bruce had breached his fiduciary duties to the
estate by commingling estate assets with personal and business assets, converting estate
assets and failing to account for assets as required by the Probate Code. After a meeting
between Woodward, Terry, and Bruce, the motion to remove Bruce was voluntarily dismissed.
4.   The judgment was for $12,536.55 plus interest and $2500 in attorney's fees.
5.   The new liabilities included payment on a note which Genelda had guaranteed for Terry's
ex-husband, Nick Streza, who filed bankruptcy in May 1992; upkeep expenses not paid by
Terry while she was living in the residence; and legal fees for Terry's eventual eviction from
the property. 
6.   From the net proceeds of the sale, $52,695, Bruce paid approximately $5178 in estate
debts and expenses and then distributed $25,000 to himself and $22,203 to Terry ($526.10 to
Terry outright and $21,677 to Smith as trustee.) Smith immediately endorsed the check
constituting the trust's share to Terry and terminated the trust. 
7.   Woodward later amended his petition to state that it was unconscionable for Bruce and
the trust to retain the proceeds of the sale and sought imposition of a constructive trust on the
proceeds. 
8.   The order also required Woodward to amend his pleadings to set forth specific facts
forming the basis for his allegations of conspiracy and fraud.
9.   Janes v. Commerce Federal Savings & Loan Association, 639 S.W.2d 490 (Tex.
App.--Texarkana 1982, writ ref'd n.r.e.), cited by Woodward in his brief, is inapposite. Although in
Janes the court held that the statutory lien which arose from the intestate's debts had priority over a
subsequent lien given by the decedent's heir, id. at 492, no will had been probated and the estate was
not subject to administration. Id. at 491.
10.  The creditor may have other remedies to reach excess proceeds of the sale, such as
garnishment or a turnover order, but the lien can only attach to real property.
11.  The court in New York Underwriters Ins. states that a reviewing court ordinarily looks to the
trial court's formal findings of fact and conclusions of law in reviewing a sanctions order. We merely
seek to determine from the record before us whether, based on the facts available to the litigant and the
circumstances existing when the litigant filed the pleading, the trial court abused its discretion in finding
the pleadings to be groundless and brought in bad faith. New York Underwriters Ins., 856 S.W.2d at
205.
12.  The pleadings also contain allegations against Smith for mismanagement of the trust and
avers that he had a duty to hold the proceeds from the sale for Terry's creditors. As already
noted, the trustee was dismissed before trial.
13.  While we see in the record a letter to Bruce's real estate agent stating that the writ of
execution was attached, we do not have before us a copy of the writ, nor is there evidence that
execution was ever sought.
14.  The court also noted that Woodward had filed a claim in the estate seeking his attorney's
fees even though he was never a creditor of the estate.


 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed in Part; Reversed and Rendered in Part

Filed: November 6, 1996

Publish
1.   The trust terms allowed Smith to distribute income and principal as he deemed necessary
and to terminate the trust when he felt appropriate.
2.   Where a testator names no executor in her will, the beneficiaries can agree on having an
independent administration of the estate. The independent administrator possesses the same
powers as an independent executor; after the court admits the will to probate and the administrator files
an inventory, appraisement and list of claims of the estate, no further judicial action is required to
administer the estate. Tex. Prob. Code Ann. §§ 3(q), 145(d) (West 1980). 
3.   Woodward filed a motion alleging that Bruce had breached his fiduciary duties to the
estate by commingling estate assets with personal and business assets, converting estate
assets and failing to account for assets as required by the Probate Code. After a meeting
between Woodward, Terry, and Bruce, the motion to remove Bruce was voluntarily dismissed.
4.   The judgment was for $12,536.55 plus interest and $2500 in attorney's fees.
5.   The new liabilities included payment on a note which Genelda had guaranteed for Terry's
ex-husband, Nick Streza, who filed bankruptcy in May 1992; upkeep expenses not paid by
Terry while she was living in the residence; and legal fees for Terry's eventual eviction from
the property. 
6.   From the net proceeds of the sale, $52,695, Bruce paid approximately $5178 in estate
debts and expenses and then distributed $25,000 to himself and $22,203 to Terry ($526.10 to
Terry outright and $21,677 to Smith as trustee.) Smith immediately endorsed the check
constituting the trust's share to Terry and terminated the trust. 
7.   Woodward later amended his petition to state that it was unconscionable for Bruce and
the trust to retain the proceeds of the sale and sought imposition of a constructive trust on the
proceeds. 
8.   The order also required Woodward to amend his pleadings to set forth specific facts
forming the basis for his allegations of conspiracy and fraud.
9.   Janes v. Commerce Federal Savings & Loan Association, 639 S.W.2d 490 (Tex.
App.--Texarkana 1982, writ ref'd n.r.e.), cited by Woodward in his brief, is inapposite. Although in
Janes the court held that the statutory lien which arose from the intestate's debts had priority over a
subsequent lien given by the decedent's heir, id. at 492, no will had been probated and the estate was
not subject to administration. Id. at 491.
10.  The creditor may have other remedies to reach excess proceeds of the sale, such as
garnishment or a turnover order, but the lien can only attach to real property.
11.  The court in New York Underwriters Ins. states that a reviewing court ordinarily looks to the
trial court's formal findings of fact and conclusions of law in reviewing a sanctions order. We merely
seek to determine from the record before us whether, based on the facts available to the litigant and the
circumstances existing when the litigant filed the pleading, the trial court abused its discretion in finding
the pleadings to be groundless and brought in bad faith. New York Underwriters Ins., 856 S.W.2d at
205.
12.  The pleadings also contain allegations against Smith for mismanagement of the trust and
avers that he had a duty to hold the proceeds from the sale