TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00416-CV






Charles B. Gorham and Edward Badouh, Jr., Individually and as next friend of


Edward Badouh, III, a minor/Scott Edward Parker; Kenneth Dorsey


Parker; and Elaine Badouh Hale, Appellants



v.



Robert H. Gates, Dependent Administrator of the Estate of Rubylien Barber


Badouh; Scott Edward Parker; Kenneth Dorsey Parker; Elaine Badouh


Hale/Charles B. Gorham and Edward Badouh, Jr., Appellees







FROM THE COUNTY COURT AT LAW OF COMAL COUNTY


NO. 96-PC-234, HONORABLE CLAUDE D. DAVIS, JUDGE PRESIDING







 This appeal presents another chapter in an ongoing probate dispute involving the
disposition of Rubylien Barber Badouh's residence. See Hale v. Badouh, 975 S.W.2d 419 (Tex.
App.--Austin 1998), aff'd in part and rev'd in part, 22 S.W.3d 392 (Tex. 2000); Parker v. Gates,
No. 3-00-411-CV (Tex. App.--Austin Dec. 21, 2000, pet. dism'd w.o.j.) (not designated for
publication). Appellants, Charles B. Gorham ("Gorham") and Edward Badouh, Jr. ("Badouh"), (1) are 
creditors, both asserting a lien against a house that was bequeathed by the decedent, Rubylien Barber
Badouh, to her daughter, Elaine Badouh Hale ("Hale"). When Edward Badouh filed an application
for a turnover order to enforce his judgment against Hale, Hale attempted to disclaim her interest in
the house. However, Hale's disclaimer was ultimately determined to be invalid. See Badouh v.
Hale, 22 S.W.3d 392 (Tex. 2000). Subsequently, in response to a joint application for the sale of
property filed by the administrator and the appellants, the probate court ordered the sale of the house
and entered a decree confirming the report of sale. Uncertain as to who was entitled to the proceeds
from the sale of the property, Robert H. Gates ("Gates"), dependent administrator of the estate, filed
a motion to approve distributions and close the estate, in which he requested that the house be sold
free and clear of any liens and that the proceeds of the sale be placed in the registry of the court until
the court could determine how those proceeds should be distributed. The probate court granted the
motion and ordered that the proceeds from the sale of the house be placed in the registry of the court
and further ordered that any lien claims that appellants may have against the house shall attach to the
deposited funds. Gorham and Badouh appeal this latest order of the probate court, arguing that after
estate expenses are settled, the excess proceeds from the sale of the house should be immediately
disbursed to them in satisfaction of their lien claims. We will overrule appellants' issue and affirm
the probate court's order.


BACKGROUND (2)

 In 1990, Rubylien Barber Badouh ("Rubylien") executed a will (3) by which she
specifically bequeathed to her daughter, Hale, her home in New Braunfels (the "property"). In 1992,
the guardianship of the estate of Rubylien obtained a final judgment against Hale in excess of
$150,000. (4) On April 15, 1993, the judgment was abstracted and recorded in the official public
records of Comal County. On May 6, 1998, Badouh purchased and acquired the estate's interest in
the judgment, the judgment lien, and a promissory note for $50,000. Accordingly, Badouh currently
owns the judgment and lien in their entirety and they are no longer assets of the estate. The judgment
remains unsatisfied.

 In 1994, Hale obtained legal services for another matter from attorney Charles
Gorham. In exchange for the legal services, Hale executed a real estate lien note for $100,000 in
favor of Gorham. She secured the note by a deed of trust that pledged her expected interest in the
property; the deed of trust was filed in the real property records of Comal County on May 2. Hale's
indebtedness for Gorham's legal services remains unsatisfied.

 On August 18, 1996, Rubylien died. She was survived by Badouh and his son,
Edward Badouh, III, and by Hale and her two sons, Scott Edward Parker ("Scott") and Kenneth
Dorsey Parker ("Dorsey"). The will was filed for probate on August 23, 1996, and on January 30,
1997, a dependent administration was established for Rubylien's estate. Gates was named dependent
administrator.

 On January 23, only seven days prior to the filing of the will for probate, Badouh filed
an application for a turnover order to enforce his judgment lien against Hale's interest in estate
assets, including her interest in the property. On January 28, Hale filed a disclaimer, attempting to
disclaim her entire interest in the estate assets. Gorham filed a plea in intervention on January 30
to assert his claim against Hale's interest in the property.

 On February 24, Gates filed a suit for declaratory judgment, seeking guidance
regarding the validity of Hale's disclaimer and the proper distribution of the estate assets. The
parties filed competing summary judgment motions. The probate court issued an order granting
partial summary judgment and severance. In the order, the court determined that Hale's disclaimer
was invalid and ineffective because before filing the disclaimer, Hale had exercised dominion and
control over the property by executing the deed of trust and note, pledging her expectancy in the
property. The probate court's determination was ultimately upheld by the supreme court. (5)

 Subsequently, Gorham, Badouh, and Gates filed a joint application for the sale of the
property. The application urged that a sale was necessary to satisfy estate expenses and debts and
to satisfy the liens of Gorham and Badouh. On May 26, 2000, following a hearing on the
application, the probate court signed an order for private sale of property. 

 Pursuant to the order of sale, Gates entered into an earnest money contract with
Samuel and Renee Kneuper in November 2000 for the sale of the property. Gates presented a report
of sale to the probate court for approval. On January 23, 2001, the probate court rendered a decree
confirming private sale of real property, approving the report of sale, and ordering that the sale take
place. The probate court also filed findings of fact and conclusions of law, which included a finding
that "a necessity exists for the Estate to sell the Property and that it is in the best interests of the
Estate that Administrator be authorized to convey the Property upon compliance by the purchaser
with the terms of the sale, as set forth in the Contract of Sale attached to the Order of Sale."

 Several months later, Gates filed an objection to the standing of Gorham and Badouh
to contest estate expenditures and a motion to approve distributions and close estate. In the motion,
Gates proposed that the sale proceed as ordered but that the proceeds of the sale be deposited into
the registry of the court, pending resolution of the competing claims to the proceeds. Asserting a
claim to the sale proceeds as beneficiaries under Rubylien's will, Scott and Dorsey filed a petition
in intervention, by which they also challenged the standing of Gorham and Badouh. Following a
hearing on the motions, the probate court overruled any objections to appellants' standing. The court
further ordered that "[n]otwithstanding any contrary provisions of this court's Order for Private Sale
of Property . . . and Decree Confirming Private Sale of Real Property . . . Administrator is directed
to convey the real property made the subject of the Order and the Decree . . . free and clear of the
abstract of judgment lien held by Badouh and free and clear of the Deed of Trust lien held by
Gorham." The court also declared that


the Property shall be conveyed by Administrator free and clear of the liens of
Administrator, Gorham and Badouh but to the full extent of their valid lien claims
against the Property, and without prejudice to the rights established by this court's
Order and Decree, such lien claims shall attach to the funds to be held in the registry
of court, and such lien claims shall be satisfied to the fullest extent possible from
such Sales Proceeds as if the Property were sold in conformity with this court's Order
and Decree with the liens in place.Gorham and Badouh appeal this order of the probate court. (6)


DISCUSSION

 By one issue, appellants claim the probate court erred by "ignoring, and acting and
ruling contrary to, prior judgments upheld on appeal that the Property be sold to pay liens of Gorham
and Badouh." In support of this contention, appellants argue that the validity of their judgment liens
has already been litigated and resolved by both the partial summary judgment granted in 1997 and
the May 26, 2000 order for the sale of property. They further assert that both orders have been
appealed and upheld by either this Court or the Texas Supreme Court, and therefore, Gates, Scott,
and Dorsey are now foreclosed from challenging the validity of the liens. We disagree with
appellants' assertion that the validity of the liens has been finally resolved and that the probate court
is now precluded from considering the issue.


The Partial Summary Judgment

 The probate court's order granting partial summary judgment and severance addressed
Hale's attempted disclaimer of her interest in Rubylien's estate. In that order, the court specifically
stated that it would "defer for the time being the matter of priority of the lien interests in [the
property] as among Charles B. Gorham, Robert Gates, Administrator, and Edward Badouh. Jr." 
Similarly, on appeal, both this Court and the supreme court addressed only the effectiveness of
Hale's disclaimer. (7) None of the courts considered the validity of the liens of Gorham and Badouh,
as that issue was not raised by the parties.


The Order for Private Sale of Property

 The probate court issued the order for private sale of property in response to a joint
application by Gates, Gorham, and Badouh. Appellants assert that the application was filed and the
order was granted pursuant to section 338 of the probate code. See Tex. Prob. Code Ann. § 338
(West 1980). And according to section 338 and Vineyard v. Irvin, 855 S.W.2d 208 (Tex.
App.--Corpus Christi 1993, no writ), the order was in the nature of a foreclosure judgment,
foreclosing appellants' liens. 


 The Order

 In the joint application for the sale of property, Gorham and Badouh alleged that sale
of the property was necessary pursuant to section 338 of the probate code because "there are no other
sufficient assets known and available to satisfy the claims and liens of Gorham and Badouh and
Estate creditors." Gates also joined in the application, but he relied on section 341 of the probate
code: (8) "[P]ursuant to Tex. Prob. Code § 341, the Estate is entitled to request the sale of the Property
to pay the Estate's administrative expenses and claims."

 The probate court granted the application, but did not specify the basis for the order. 
Instead, the court found that "the sale of the Property is necessary and advisable to satisfy the lien
claims of Charles B. Gorham and Edward Badouh, Jr. and/or to provide funds for the Estate to pay
claims and administrative expenses, and there are no other Estate assets sufficient to satisfy such
purposes." (Emphasis added.) Thus, contrary to appellants' assertions, the probate court's order
does not unequivocally acknowledge the necessity for the sale of the property specifically to satisfy
appellants' liens. More importantly, the order does not purport to determine the validity of those
liens as liens against the estate nor does it include the priority of payment of the liens.


 Scope of Section 338

 Although appellants claim to have relied on section 338 in applying for the sale of
the property, appellants fail to explain how they come within the purview of that statute. Section 338
begins with the phrase, "Any creditor holding a claim secured by a valid mortgage or other lien . . . ." 
Tex. Prob. Code Ann. § 338. According to the probate code, "claims" include "liabilities of a
decedent which survive, including taxes, whether arising in contract or in tort or otherwise, funeral
expenses, the expense of a tombstone, expenses of administration, estate and inheritance taxes, and
debts due such estates." Id. § 3 (West Supp. 2002) (emphasis added). The purpose of the
administration is to satisfy the decedent's debts and to distribute the remainder of the estate in
accordance with the testator's wishes. Woodward v. Jaster, 933 S.W.2d 777, 782 (Tex.
App.--Austin 1996, no writ). In this case, appellants concede that the debts secured by the liens are
not debts of the decedent, but debts of Hale, a beneficiary. Thus, appellants are not creditors holding
"claims" against the decedent as contemplated by section 338.

 Even assuming that section 338 applies to appellants' liens, that statute addresses only
the necessity for the sale of the property. It does not address distribution of the proceeds following
the sale. Section 338 of the probate code provides in pertinent part:


Any creditor holding a claim secured by a valid mortgage or other lien, which has
been allowed and approved or established by suit, may obtain from the court in which
the estate is pending an order that said property, or so much thereof as necessary to
satisfy his claim, shall be sold, by filing his written application therefor. . . . If it
appears to the court that it would be advisable to discharge the lien out of the general
assets of the estate or that it be refinanced, he may so order; otherwise, he shall grant
the application and order that the property be sold at public or private sale, as deemed
best, as in ordinary cases of sales of real estate.



Tex. Prob. Code Ann. § 338. When read in conjunction with section 322 (9) of the probate code,
section 338 addresses the narrow issue of whether the probate court should order the sale of estate
property. Once the sale has occurred, payment of claims must still proceed in accordance with
section 322. In this case, Gates stated in the joint application for the sale of property that the sale
was necessary to satisfy claims and administrative expenses of the estate. The probate court included
Gates's assertion as a basis for the order. According to section 322, administrative expenses have
priority of payment over secured claims. See id. § 322 (West Supp. 2002). Thus, we disagree with
the proposition that an order for the sale of property under section 338 conclusively determines that
the proceeds of that sale immediately vest in the lienholders seeking the sale. (10)


 Gates Holds Legal Title to Property

 Appellants state in their brief that "if given no choice, [they] could accept a slight
delay of their liens being paid from funds in the registry of the court, if that were a certainty." This
Court, however, cannot guarantee that appellants' liens will certainly be paid from funds in the
registry of the probate court. As explained above, appellants did not have claims against the estate. 
Their claims were against Hale, a beneficiary. Although appellants' liens attached to Hale's vested
interest in real property, Hale did not actually hold legal title to the property. See Woodward, 933
S.W.2d at 781. Gates, the administrator, holds legal title and a superior right to possess estate
property and to dispose of it as necessary to pay debts of the estate. Id. ("Until the administrator pays
all debts owed by the estate and distributes the property, the beneficiaries do not actually hold legal
title to the property."); see also Tex. Prob. Code Ann. § 37 (West 2002) ("When a person dies,
leaving a lawful will, all of his estate devised or bequeathed by such will . . . shall vest immediately
in the devisees or legatees of such estate . . . ; subject, however, to the payment of the debts of the
testator . . . ."). Thus, if the administrator exercises his power to dispose of estate property to pay
estate debts, the sale of the property divests the beneficiary of his interest in the property. 
Woodward, 933 S.W.2d at 781-82. Because a sale of the property to pay off debts of the estate can
divest a beneficiary's interest, the sale also extinguishes any lien against the beneficiary's interest
in the property. (11) Id. 

 Consequently, Gates retained legal title to the property, and the judgment liens of
Gorham and Badouh could only have attached to the vested interest in the property held by Hale. 
And as explained above, that interest may be divested by a sale of the property. Accordingly, we
overrule appellants' sole issue on appeal.


CONCLUSION

 We hold that the probate court's partial summary judgment and order of sale did not
conclusively adjudicate appellants' rights to the proceeds from the sale of property. Accordingly,
we find no error in the probate court's order approving distributions and closing the estate, in which
the probate court ordered that the proceeds from the sale of property be placed in the registry of the
court pending resolution of the parties' claims to the proceeds. We therefore overrule appellants'
issue and affirm the order of the probate court.



 __________________________________________

 David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: February 7, 2002

Publish

1. We will refer to Charles B. Gorham and Edward Badouh, Jr. collectively as "appellants" unless
our discussion requires us to distinguish them. 
2. Many of the background facts are taken from previous opinions addressing this same probate
proceeding. See Hale v. Badouh, 975 S.W.2d 419 (Tex. App.--Austin 1998), aff'd in part and rev'd
in part, 22 S.W.3d 392 (Tex. 2000); Parker v. Gates, No. 3-00-411-CV (Tex. App.--Austin Dec.
21, 2000, pet. dism'd w.o.j.) (not designated for publication).
3. In 1991, Rubylien added a codicil to the will. We will refer to the will and the codicil
collectively as the "will."
4. The judgment was obtained in October 1992 following a jury trial in which a jury found that
Hale had breached her fiduciary duties to Rubylien while Hale managed Rubylien's estate under a
durable power of attorney. Badouh initiated the proceedings as a representative for Rubylien, an
incompetent person. The judgment also awarded attorney's fees in excess of $146,562.09 in favor
of the attorneys representing Badouh in the proceedings. 
5. This Court reversed the probate court's partial summary judgment in part, holding that Hale's
disclaimer was valid. See Hale v. Badouh, 975 S.W.2d 419 (Tex. App.--Austin 1998), aff'd in part
and rev'd in part, 22 S.W.3d 392 (Tex. 2000). 
6. Scott, Dorsey, and Hale also filed a notice of appeal, challenging the probate court's overruling
of their objection to appellants' standing. However, Scott, Dorsey, and Hale failed to brief this issue
and have therefore presented nothing for our review. See Tex. R. App. P. 38.1.
7. The probate court, this Court, and the supreme court also addressed the no-contest clause of the
will and whether Badouh violated it by requesting turnover relief.
8. Section 341 provides: 


 Application may be made to the court for an order to sell property of the estate when it
appears necessary or advisable in order to:



 Pay expenses of administration, funeral expenses and expenses of last sickness of
decedents, and allowances and claims against the estates of decedents.

 Dispose of any interest in real property of the estate of a decedent, when it is deemed
to the best interest of the estate to sell such interest.



Tex. Prob. Code Ann. § 341 (West Supp. 2002).
9. Section 322 sets out the classification and priority of payment for claims against an estate of
a decedent. Tex. Prob. Code Ann. § 322 (West Supp. 2002). 
10. Appellants cite Vineyard v. Irvin, 855 S.W.2d 208 (Tex. App.--Corpus Christi 1993, no writ),
in support of their argument that the order for sale of property is in the nature of a foreclosure
judgment finally adjudicating the validity of appellants' liens and justifying the immediate
distribution of the proceeds from the sale to satisfy their liens. The Corpus Christi court analogized
an order for sale of property to a foreclosure judgment for the purpose of determining the finality and
appealability of such an order. However, the court also stated that the purpose of an order for sale
of property is to conclusively decide "to allow a judicial sale and the manner of sale." Id. at 210. 
The only portion of the opinion addressing distribution of the proceeds following the sale appears
in a footnote, in which the court states: "Under section 325, the personal representative must then
pay the proceeds of the sale to the holder of the mortgage, subject to being ordered to do so upon
failure to make such payment." Id. at 210 n.2. Since the opinion was issued, section 325 of the
probate code has been repealed. See Act of May 27, 1995, 74th Leg., R.S., ch. 1054, § 29, 1995 Tex.
Gen. Laws 5206, 5216 (Tex. Prob. Code Ann. § 325, since repealed). Thus, we decline to read
Vineyard as support for appellants' argument that an order for sale of property mandates immediate
distribution of the proceeds to the lienholders following the sale of the property.
11. We note that the difference between this case and Woodward is that the probate court in this
case ordered that appellants' liens shall attach to the proceeds placed in the registry of the court.