# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00416-CV

**Charles B. Gorham and Edward Badouh, Jr., Individually and as next friend of Edward Badouh, III, a minor/Scott Edward Parker; Kenneth Dorsey Parker; and Elaine Badouh Hale, Appellants**

**v.**

**Robert H. Gates, Dependent Administrator of the Estate of Rubylien Barber Badouh; Scott Edward Parker; Kenneth Dorsey Parker; Elaine Badouh Hale/Charles B. Gorham and Edward Badouh, Jr., Appellees**

## FROM THE COUNTY COURT AT LAW OF COMAL COUNTY
## NO. 96-PC-234, HONORABLE CLAUDE D. DAVIS, JUDGE PRESIDING

This appeal presents another chapter in an ongoing probate dispute involving the disposition of Rubylien Barber Badouh's residence. *See Hale v. Badouh*, 975 S.W.2d 419 (Tex. App.—Austin 1998), *aff'd in part and rev'd in part*, 22 S.W.3d 392 (Tex. 2000); *Parker v. Gates*, No. 3-00-411-CV (Tex. App.—Austin Dec. 21, 2000, pet. dism'd w.o.j.) (not designated for publication). Appellants, Charles B. Gorham ("Gorham") and Edward Badouh, Jr. ("Badouh"),[1] are creditors, both asserting a lien against a house that was bequeathed by the decedent, Rubylien Barber Badouh, to her daughter, Elaine Badouh Hale ("Hale"). When Edward Badouh filed an application for a turnover order to enforce his judgment against Hale, Hale attempted to disclaim her interest in

---

[1] We will refer to Charles B. Gorham and Edward Badouh, Jr. collectively as "appellants" unless our discussion requires us to distinguish them.

the house. However, Hale's disclaimer was ultimately determined to be invalid. *See Badouh v. Hale*, 22 S.W.3d 392 (Tex. 2000). Subsequently, in response to a joint application for the sale of property filed by the administrator and the appellants, the probate court ordered the sale of the house and entered a decree confirming the report of sale. Uncertain as to who was entitled to the proceeds from the sale of the property, Robert H. Gates ("Gates"), dependent administrator of the estate, filed a motion to approve distributions and close the estate, in which he requested that the house be sold free and clear of any liens and that the proceeds of the sale be placed in the registry of the court until the court could determine how those proceeds should be distributed. The probate court granted the motion and ordered that the proceeds from the sale of the house be placed in the registry of the court and further ordered that any lien claims that appellants may have against the house shall attach to the deposited funds. Gorham and Badouh appeal this latest order of the probate court, arguing that after estate expenses are settled, the excess proceeds from the sale of the house should be immediately disbursed to them in satisfaction of their lien claims. We will overrule appellants' issue and affirm the probate court's order.

## BACKGROUND[2]

In 1990, Rubylien Barber Badouh ("Rubylien") executed a will[3] by which she specifically bequeathed to her daughter, Hale, her home in New Braunfels (the "property"). In 1992,

---

[2] Many of the background facts are taken from previous opinions addressing this same probate proceeding. *See Hale v. Badouh*, 975 S.W.2d 419 (Tex. App.—Austin 1998), *aff'd in part and rev'd in part*, 22 S.W.3d 392 (Tex. 2000); *Parker v. Gates*, No. 3-00-411-CV (Tex. App.—Austin Dec. 21, 2000, pet. dism'd w.o.j.) (not designated for publication).

[3] In 1991, Rubylien added a codicil to the will. We will refer to the will and the codicil collectively as the "will."

the guardianship of the estate of Rubylien obtained a final judgment against Hale in excess of $150,000.[4]  On April 15, 1993, the judgment was abstracted and recorded in the official public records of Comal County.  On May 6, 1998, Badouh purchased and acquired the estate's interest in the judgment, the judgment lien, and a promissory note for $50,000.  Accordingly, Badouh currently owns the judgment and lien in their entirety and they are no longer assets of the estate.  The judgment remains unsatisfied.

In 1994, Hale obtained legal services for another matter from attorney Charles Gorham.  In exchange for the legal services, Hale executed a real estate lien note for $100,000 in favor of Gorham.  She secured the note by a deed of trust that pledged her expected interest in the property; the deed of trust was filed in the real property records of Comal County on May 2.  Hale's indebtedness for Gorham's legal services remains unsatisfied.

On August 18, 1996, Rubylien died.  She was survived by Badouh and his son, Edward Badouh, III, and by Hale and her two sons, Scott Edward Parker ("Scott") and Kenneth Dorsey Parker ("Dorsey").  The will was filed for probate on August 23, 1996, and on January 30, 1997, a dependent administration was established for Rubylien's estate.  Gates was named dependent administrator.

On January 23, only seven days prior to the filing of the will for probate, Badouh filed an application for a turnover order to enforce his judgment lien against Hale's interest in estate assets,

---

[4] The judgment was obtained in October 1992 following a jury trial in which a jury found that Hale had breached her fiduciary duties to Rubylien while Hale managed Rubylien's estate under a durable power of attorney.  Badouh initiated the proceedings as a representative for Rubylien, an incompetent person.  The judgment also awarded attorney's fees in excess of $146,562.09 in favor of the attorneys representing Badouh in the proceedings.

including her interest in the property. On January 28, Hale filed a disclaimer, attempting to disclaim her entire interest in the estate assets. Gorham filed a plea in intervention on January 30 to assert his claim against Hale's interest in the property.

On February 24, Gates filed a suit for declaratory judgment, seeking guidance regarding the validity of Hale's disclaimer and the proper distribution of the estate assets. The parties filed competing summary judgment motions. The probate court issued an order granting partial summary judgment and severance. In the order, the court determined that Hale's disclaimer was invalid and ineffective because before filing the disclaimer, Hale had exercised dominion and control over the property by executing the deed of trust and note, pledging her expectancy in the property. The probate court's determination was ultimately upheld by the supreme court.[5]

Subsequently, Gorham, Badouh, and Gates filed a joint application for the sale of the property. The application urged that a sale was necessary to satisfy estate expenses and debts and to satisfy the liens of Gorham and Badouh. On May 26, 2000, following a hearing on the application, the probate court signed an order for private sale of property.

Pursuant to the order of sale, Gates entered into an earnest money contract with Samuel and Renee Kneuper in November 2000 for the sale of the property. Gates presented a report of sale to the probate court for approval. On January 23, 2001, the probate court rendered a decree confirming private sale of real property, approving the report of sale, and ordering that the sale take place. The probate court also filed findings of fact and conclusions of law, which included a finding

---

[5] This Court reversed the probate court's partial summary judgment in part, holding that Hale's disclaimer was valid. *See Hale v. Badouh*, 975 S.W.2d 419 (Tex. App.—Austin 1998), *aff'd in part and rev'd in part*, 22 S.W.3d 392 (Tex. 2000).

that "a necessity exists for the Estate to sell the Property and that it is in the best interests of the Estate that Administrator be authorized to convey the Property upon compliance by the purchaser with the terms of the sale, as set forth in the Contract of Sale attached to the Order of Sale."

Several months later, Gates filed an objection to the standing of Gorham and Badouh to contest estate expenditures and a motion to approve distributions and close estate. In the motion, Gates proposed that the sale proceed as ordered but that the proceeds of the sale be deposited into the registry of the court, pending resolution of the competing claims to the proceeds. Asserting a claim to the sale proceeds as beneficiaries under Rubylien's will, Scott and Dorsey filed a petition in intervention, by which they also challenged the standing of Gorham and Badouh. Following a hearing on the motions, the probate court overruled any objections to appellants' standing. The court further ordered that "[n]otwithstanding any contrary provisions of this court's Order for Private Sale of Property . . . and Decree Confirming Private Sale of Real Property . . . Administrator is directed to convey the real property made the subject of the Order and the Decree . . . free and clear of the abstract of judgment lien held by Badouh and free and clear of the Deed of Trust lien held by Gorham." The court also declared that

> the Property shall be conveyed by Administrator free and clear of the liens of Administrator, Gorham and Badouh but to the full extent of their valid lien claims against the Property, and without prejudice to the rights established by this court's Order and Decree, such lien claims shall attach to the funds to be held in the registry of court, and such lien claims shall be satisfied to the fullest extent possible from such Sales Proceeds as if the Property were sold in conformity with this court's Order and Decree with the liens in place.

5

Gorham and Badouh appeal this order of the probate court.[6]

## DISCUSSION

By one issue, appellants claim the probate court erred by "ignoring, and acting and ruling contrary to, prior judgments upheld on appeal that the Property be sold to pay liens of Gorham and Badouh." In support of this contention, appellants argue that the validity of their judgment liens has already been litigated and resolved by both the partial summary judgment granted in 1997 and the May 26, 2000 order for the sale of property. They further assert that both orders have been appealed and upheld by either this Court or the Texas Supreme Court, and therefore, Gates, Scott, and Dorsey are now foreclosed from challenging the validity of the liens. We disagree with appellants' assertion that the validity of the liens has been finally resolved and that the probate court is now precluded from considering the issue.

**The Partial Summary Judgment**

The probate court's order granting partial summary judgment and severance addressed Hale's attempted disclaimer of her interest in Rubylien's estate. In that order, the court specifically stated that it would "defer for the time being the matter of priority of the lien interests in [the

---

[6] Scott, Dorsey, and Hale also filed a notice of appeal, challenging the probate court's overruling of their objection to appellants' standing. However, Scott, Dorsey, and Hale failed to brief this issue and have therefore presented nothing for our review. *See* Tex. R. App. P. 38.1.

property] as among Charles B. Gorham, Robert Gates, Administrator, and Edward Badouh. Jr."
Similarly, on appeal, both this Court and the supreme court addressed only the effectiveness of Hale's disclaimer.[7] None of the courts considered the validity of the liens of Gorham and Badouh, as that issue was not raised by the parties.

**The Order for Private Sale of Property**

The probate court issued the order for private sale of property in response to a joint application by Gates, Gorham, and Badouh. Appellants assert that the application was filed and the order was granted pursuant to section 338 of the probate code. *See* Tex. Prob. Code Ann. § 338 (West 1980). And according to section 338 and *Vineyard v. Irvin*, 855 S.W.2d 208 (Tex. App.—Corpus Christi 1993, no writ), the order was in the nature of a foreclosure judgment, foreclosing appellants' liens.

### *The Order*

In the joint application for the sale of property, Gorham and Badouh alleged that sale of the property was necessary pursuant to section 338 of the probate code because "there are no other sufficient assets known and available to satisfy the claims and liens of Gorham and Badouh and Estate creditors." Gates also joined in the application, but he relied on section 341 of the probate

---

[7] The probate court, this Court, and the supreme court also addressed the no-contest clause of the will and whether Badouh violated it by requesting turnover relief.

code:[8] "[P]ursuant to Tex. Prob. Code § 341, the Estate is entitled to request the sale of the Property to pay the Estate's administrative expenses and claims."

The probate court granted the application, but did not specify the basis for the order. Instead, the court found that "the sale of the Property is necessary and advisable to satisfy the lien claims of Charles B. Gorham and Edward Badouh, Jr. *and/or* to provide funds for the Estate to pay claims and administrative expenses, and there are no other Estate assets sufficient to satisfy such purposes." (Emphasis added.) Thus, contrary to appellants' assertions, the probate court's order does not unequivocally acknowledge the necessity for the sale of the property specifically to satisfy appellants' liens. More importantly, the order does not purport to determine the validity of those liens as liens against the estate nor does it include the priority of payment of the liens.

### Scope of Section 338

Although appellants claim to have relied on section 338 in applying for the sale of the property, appellants fail to explain how they come within the purview of that statute. Section 338 begins with the phrase, "Any creditor holding a claim secured by a valid mortgage or other lien . . . ."

---

[8] Section 341 provides:

Application may be made to the court for an order to sell property of the estate when it appears necessary or advisable in order to:

(1) Pay expenses of administration, funeral expenses and expenses of last sickness of decedents, and allowances and claims against the estates of decedents.

(2) Dispose of any interest in real property of the estate of a decedent, when it is deemed to the best interest of the estate to sell such interest.

Tex. Prob. Code Ann. § 341 (West Supp. 2002).

Tex. Prob. Code Ann. § 338.  According to the probate code, "claims" include "*liabilities of a decedent* which survive, including taxes, whether arising in contract or in tort or otherwise, funeral expenses, the expense of a tombstone, expenses of administration, estate and inheritance taxes, and debts due such estates." *Id.* § 3 (West Supp. 2002) (emphasis added).  The purpose of the administration is to satisfy the decedent's debts and to distribute the remainder of the estate in accordance with the testator's wishes.  *Woodward v. Jaster*, 933 S.W.2d 777, 782 (Tex. App.—Austin 1996, no writ).  In this case, appellants concede that the debts secured by the liens are not debts of the decedent, but debts of Hale, a beneficiary.  Thus, appellants are not creditors holding "claims" against the decedent as contemplated by section 338.

Even assuming that section 338 applies to appellants' liens, that statute addresses only the necessity for the sale of the property.  It does not address distribution of the proceeds following the sale.  Section 338 of the probate code provides in pertinent part:

> Any creditor holding a claim secured by a valid mortgage or other lien, which has been allowed and approved or established by suit, may obtain from the court in which the estate is pending an order that said property, or so much thereof as necessary to satisfy his claim, shall be sold, by filing his written application therefor. . . .  If it appears to the court that it would be advisable to discharge the lien out of the general assets of the estate or that it be refinanced, he may so order; otherwise, he shall grant the application and order that the property be sold at public or private sale, as deemed best, as in ordinary cases of sales of real estate.

Tex. Prob. Code Ann. § 338.  When read in conjunction with section 322[9] of the probate code, section 338 addresses the narrow issue of whether the probate court should order the sale of estate

---

[9]  Section 322 sets out the classification and priority of payment for claims against an estate of a decedent.  Tex. Prob. Code Ann. § 322 (West Supp. 2002).

property. Once the sale has occurred, payment of claims must still proceed in accordance with section 322. In this case, Gates stated in the joint application for the sale of property that the sale was necessary to satisfy claims and administrative expenses of the estate. The probate court included Gates's assertion as a basis for the order. According to section 322, administrative expenses have priority of payment over secured claims. *See id*. § 322 (West Supp. 2002). Thus, we disagree with the proposition that an order for the sale of property under section 338 conclusively determines that the proceeds of that sale immediately vest in the lienholders seeking the sale.[10]

### Gates Holds Legal Title to Property

Appellants state in their brief that "if given no choice, [they] could accept a slight delay of their liens being paid from funds in the registry of the court, if that were a certainty." This Court, however, cannot guarantee that appellants' liens will certainly be paid from funds in the registry of the probate court. As explained above, appellants did not have claims against the estate. Their claims

---

[10] Appellants cite *Vineyard v. Irvin*, 855 S.W.2d 208 (Tex. App.—Corpus Christi 1993, no writ), in support of their argument that the order for sale of property is in the nature of a foreclosure judgment finally adjudicating the validity of appellants' liens and justifying the immediate distribution of the proceeds from the sale to satisfy their liens. The Corpus Christi court analogized an order for sale of property to a foreclosure judgment for the purpose of determining the finality and appealability of such an order. However, the court also stated that the purpose of an order for sale of property is to conclusively decide "to allow a judicial sale and the manner of sale." *Id.* at 210. The only portion of the opinion addressing distribution of the proceeds following the sale appears in a footnote, in which the court states: "Under section 325, the personal representative must then pay the proceeds of the sale to the holder of the mortgage, subject to being ordered to do so upon failure to make such payment." *Id.* at 210 n.2. Since the opinion was issued, section 325 of the probate code has been repealed. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 1054, § 29, 1995 Tex. Gen. Laws 5206, 5216 (Tex. Prob. Code Ann. § 325, since repealed). Thus, we decline to read *Vineyard* as support for appellants' argument that an order for sale of property mandates immediate distribution of the proceeds to the lienholders following the sale of the property.

10

were against Hale, a beneficiary. Although appellants' liens attached to Hale's vested interest in real property, Hale did not actually hold legal title to the property. *See Woodward*, 933 S.W.2d at 781. Gates, the administrator, holds legal title and a superior right to possess estate property and to dispose of it as necessary to pay debts of the estate. *Id.* ("Until the administrator pays all debts owed by the estate and distributes the property, the beneficiaries do not actually hold legal title to the property."); *see also* Tex. Prob. Code Ann. § 37 (West 2002) ("When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will . . . shall vest immediately in the devisees or legatees of such estate . . . ; subject, however, to the payment of the debts of the testator . . . ."). Thus, if the administrator exercises his power to dispose of estate property to pay estate debts, the sale of the property divests the beneficiary of his interest in the property. *Woodward*, 933 S.W.2d at 781-82. Because a sale of the property to pay off debts of the estate can divest a beneficiary's interest, the sale also extinguishes any lien against the beneficiary's interest in the property.[11] *Id.*

Consequently, Gates retained legal title to the property, and the judgment liens of Gorham and Badouh could only have attached to the vested interest in the property held by Hale. And as explained above, that interest may be divested by a sale of the property. Accordingly, we overrule appellants' sole issue on appeal.

## CONCLUSION

We hold that the probate court's partial summary judgment and order of sale did not conclusively adjudicate appellants' rights to the proceeds from the sale of property. Accordingly, we

---

[11] We note that the difference between this case and *Woodward* is that the probate court in this case ordered that appellants' liens shall attach to the proceeds placed in the registry of the court.

11

find no error in the probate court's order approving distributions and closing the estate, in which the probate court ordered that the proceeds from the sale of property be placed in the registry of the court pending resolution of the parties' claims to the proceeds.  We therefore overrule appellants' issue and affirm the order of the probate court.

_____

David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed:   February 7, 2002

Publish